[L. A. No. 10575. In Bank.—December 18, 1928.]

JOSEPH ANDREW MITCHELL, Respondent, v. WHITTIER COLLEGE (a Corporation), etc., Appellant.

R. T. Walters and Arthur G. Wray for Appellant.

Miller & Casady for Respondent.

PRESTON, J.—Is Long Beach Junior College a "college" within the meaning of paragraph eight of the last will of Amanda T. Whitson, deceased? This is the sole question presented by this appeal.

In 1921 (Stats. 1921, pp. 756, 761) the legislature of California provided for the organization, management, control, and financing of institutions to be known as junior colleges, by a statute reading in part as follows: "The junior college board may prescribe junior college courses of study, including not more than two years of work, and admit thereto the graduates of any high school of California, the graduates of other high schools, and such other candidates over eighteen years of age as may be recommended for admission by the principal of the junior college. . . . Junior colleges may provide courses of instruction designed to prepare for higher institutions of learning; courses of instruction designed to prepare persons for agricultural, industrial, commercial, homemaking, and other vocations; and such courses of instruction as may be deemed necessary to provide for the civic and liberal education of the citizens of the community.

"The junior college board shall adopt regulations governing the organization of such courses of study and shall prescribe requirements for graduation from such courses; provided, that the minimum requirement for graduation from junior college courses of study shall be at least sixty credit-hours of work. A credit-hour is hereby defined

as approximately three hours of recitation, study, and laboratory work per week carried through one-half year.''

This was done as a part of the public school system and was designed to admit students, graduates of high schools and others of similar scholarship over the age of eighteen years, for the purpose of receiving two years' training in preparation for entrance into higher institutions of learning, or for courses of instruction in agricultural, industrial, commercial, homemaking, or other vocations, and for such courses of instruction as might be deemed necessary to provide for the civic and liberal education of the citizens of the community, and to provide for the organization of such courses of study and to prescribe the requirements for graduation therefrom, and finally to prescribe the minimum requirement of work for such graduation.

Admittedly, Long Beach Junior College meets all these requirements. Subsequent to the effective date of the law, Amanda T. Whitson, a woman of means and culture, interested in higher education and with a particular interest in Whittier College, Whittier, California, an institution maintained by the Friends' Church, did, in March, 1925, sign and publish her last will, in which, after providing for specific bequests, by paragraph eight thereof she proclaimed, as far as here material, the following:

''Eight. The rest, residue and remainder of my estate I give and devise and bequeath to Whittier College, Whittier, California, in trust for the following purposes, 1st Said trust fund shall be known . . . as the Amanda T. Whitson Educational fund. 2nd. I direct that said Whittier College shall pay annually out of the said trust fund . . . $400 for a term of four years, to each of the following named persons, while in college to assist them in defraying their college expenses (listing said persons, among whom plaintiff is included). . . . In the event any of the above named persons have completed their education before my death, or in case any of them are not living, or if living do not desire for any reason to accept such assistance, then in that case the amount willed to the person . . . shall remain in the general trust fund. . . . After such of the above named persons as desire assistance in their education . . . has been provided for. . . . I give and devise and bequeath the rest, residue and remainder in full to Whittier

College . . . to establish a perpetual fund, the interest and earnings of which shall be loaned by said Whittier College to any needy and worthy young pe:ৃ:n requiring assistance in securing a college education in sums not to exceed . . . $400 to one person per annum for a term of four years, the sum loaned to bear a reasonable rate of interest per annum. It is my preference that all of the persons assisted as herein provided for shall attend Whittier College. . . . ''

Plaintiff, a minor of school age, mentioned specifically in said will, after matriculating at the Long Beach Junior College, applied for the benefits of this provision of the will, claiming to be entitled to $400 a year to pay his expenses while in said junior college. Defendant, trustee of the fund, doubted the validity of plaintiff's claim and refused the request. This suit followed, the complaint setting out the foregoing facts, together with the allegation that said Long Beach Junior College was a college within the meaning of the terms of said will. The answer admitted all of the facts alleged except the conclusion that said junior college met the requirements of said will and affirmatively set up the allegation that said college so being attended by plaintiff was not a college within the meaning of that word as used in said provision of the will. The court below gave judgment on the pleadings for plaintiff. Defendant has appealed, and, as stated, the sole question presented is to define the scope of the word ''college'' as used in said last will and testament.

Appellant insists that the proper definition is as follows: ''A 'college' is primarily an institution of higher learning, generally incorporated, not supported by public taxation or open to all free of charge, offering instruction in the liberal arts, having but a single faculty and curriculum, and usually leading to the degree of bachelor of arts.'' (See Black's Law Dictionary, p. 215; 11 C. J. 972–980.)

Admittedly, early authority in this country gives more or less support to this definition, but it is at once evident that progress has been made in the science of education as well as in all other fields, and a definition sufficient in one day and age might not apply in its entirety to the same institution at a later date. It cannot be expected that new developments made in science, arts, literature, language,

and invention have not been accompanied by developments in the institutions which foster and nourish this growth. It has well been said: "A college (as an institution) means, or ought to mean, growth; the elimination of the false; the fostering of the true. As it is expected to be perpetual in its service, it must conform to the changed condition of each new generation, possessing an elasticity of scope and work commensurate with the changing requirements of the times which it serves." (*Central University* v. *Walters,* 122 Ky. 65, 83 [90 S. W. 1066, 1070].)

To insist that a college is not such if supported in whole or in part by public taxation, or that a college may not be open to all free of charge, or may not be an extension of high school courses, or must be incorporated, or must have only a single faculty and curriculum, or may confer only a single degree, is to deny progress in the development and efficiency of institutions of learning. We think this deduction may be made from the definition upon which appellant relies, given by Mr. Webster of the word "college," which definition reads in part: "In the United States a *college* is primarily an institution of higher learning having but a single faculty and curriculum, usually leading to the degree of bachelor of arts; there is, however, no clear line of demarcation, as *institutions* have retained the name *college* while extending their instruction to university scope." (Webster's International Dictionary.) Suppose this young man had enrolled in the University of California, an institution supported in part by the state, and which has for its object "to provide instruction and complete education in all the departments of science, literature, art, industrial, and professional pursuits and general education" (Stats. 1867–68, p. 248), would it for a moment be said that he was not in "college"? A university is usually in reality but an aggregation of colleges. The test seems to be found largely in the course of study and the requirements of graduation—whether it is confined to teaching the liberal arts, whether it confers more than one degree, or whether it is supported by public taxation, or is open to all free of charge, seem not to be valid tests of its status as a college.

Search as we may, it would indeed be difficult to find a more accurate present-day definition of the scope of the

word than that found in the statute above quoted. Courses of study for high school graduates and those of similar attainment, their admission to higher institutions of learning, courses in agriculture, industry, commerce, homemaking, and other vocations, and other courses of instruction necessary to provide for the civic and liberal education of the citizens of the community, seem to be of the very essence of a present-day college. It is true that no degree may be conferred, but that is because these institutions only purport to give instruction in the first two years of the college or university courses, but it is evident that a graduate of a junior college may receive from these two years in the institution the same benefits as would be received through spending that time in the higher institution of learning itself. The definition found in the Ohio statutes (sec. 7650, Page's Gen. Code Ohio, 1926, R. S. 4007-3) is also a fairly modern statement of the scope of the word "college." It follows: "A college is a school of a higher grade than a high school, in which instruction in the high school branches is carried beyond the scope of the high school and other advanced studies are pursued, or it is a school in which special, technical, or professional studies are pursued, and which, when legally organized, may have the right to confer degrees in agreement with the terms of the law regulating its practices, or its charter; or in the want of legislative direction, in agreement with the practices of the better institutions of learning of their respective kinds in the United States."

Coming now specifically to the provision of the will before us, it may be said that higher education and courses above those of the high schools were certainly the dominant idea in the mind of the testatrix. The framework of the institution, so long as it meets this test, seems not to have been of the essence of the bequest. The fund is made an "educational fund." In two other places decedent uses the word "educational" in a sense which shows that she had in mind education in the higher institutions of learning, institutions graduation from which would be said to "complete" the education of the student as that word is used in the provision before us.

It is urged that inasmuch as Whittier College may answer to the definition put forth by appellant, and quoted

above, coupled with the fact that the testatrix was a trustee of that college and the further fact that in said provision she expressed a preference that all persons assisted by her attend said college, we must thereby conclude that she used the word in the narrow sense, or in the sense of a single curriculum, faculty, and degree in an institution not supported by public taxation. In our opinion this is too narrow a view of her intent. The predominant note of the provision is aid to students seeking higher education, education on the road to a complete scholarship attainment. There is nothing to indicate that she required the institution to conform exactly in every respect to Whittier College. It is a reflection upon decedent's foresight and a stricture upon her benevolence to say that in Whittier College alone she thought this higher education might be obtained, especially when some of her beneficiaries reside without the state of California. The utmost that could be said is that in that respect Whittier College was the institution she personally preferred among the list of colleges, but this is far from saying that she intended to make matriculation in that institution a condition precedent to the right to receive this bounty from her estate. Such a preference so expressed is not compulsory upon the legatee. (*Estate of Marti*, 132 Cal. 666 [61 Pac. 964, 64 Pac. 1071].)

What we have here said is by no means intended to reflect upon the defendant Whittier College, which happens to be the trustee for the administration of this fund. We realize that it is its sole desire to have this question settled in order that it may the better perform its duty under said testament. Our answer is that Long Beach Junior College is a college within the meaning of this provision of said will and that the plaintiff is entitled to all or so much of said fund specified as may be necessary to defray such legitimate college expense as he may incur while attending Long Beach Junior College.

The judgment is affirmed.

Curtis, J., Richards, J., Shenk, J., Seawell, J., Langdon, J., and Waste, C. J., concurred.

Hearing in Bank denied.

All the Justices concurred.