LEACH v. RACING COMMISSIONER.

1. Licenses—Application for Horse Racing Meet—Rejection for Cause.

The power of the State racing commissioner to reject an application for license to conduct horse racing meets "for any cause which he may deem sufficient," must be for a reasonable cause, since the rejection is subject to judicial review (CL 1948, § 431.9).

2. Same—Application for Horse Racing Meet—Rejection—Reasonableness.

State racing commissioner's rejection of application for license to hold horse racing meet on 24 days in October, was not unreasonable, where reasons assigned were that the half-mile track was not large enough, the facilities for the public not up to the standards of a modern racing plant and extension of present 112 days allocated for flat racing in the area not justified (CL 1948, § 431.9).

3. Officers—Presumption as to Performance of Duty.

The presumption is that a public officer has performed his duty.

References for Points in Headnotes

[1] 33 Am Jur, Licenses § 60.
[2] 33 Am Jur, Licenses § 63.
[3] 43 Am Jur, Public Officers § 511.
[4] 14 Am Jur, Costs § 91.

4. COSTS—PUBLIC QUESTION—HORSE RACING MEET—LICENSE.
   No costs are allowed in mandamus proceeding to compel the
      State racing commissioner to issue a license to plaintiff ap-
      plicant for horse racing meet, a question of public importance
      being involved.

Mandamus by Mark Leach against James. H. Inglis, Michigan Racing Commissioner, to compel issuance of license to hold racing meets. Submitted June 22, 1954. (Calendar No. 46,149.) Writ denied September 8, 1954.

*Saul Robins,* for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Daniel J. O'Hara* and *Charles M. A. Martin,* Assistants Attorney General, for defendant.

REID, J. This is a petition for a writ of mandamus directed to defendant Michigan racing commissioner, commanding him to issue to petitioner a license to conduct a horse racing meet for runners at Northville Downs race track located at Northville, Michigan, for a period of 24 days beginning October 4, 1954. Petitioner claims that the defendant's refusal to issue the desired license constituted arbitrary, capricious action because, petitioner claims, defendant rejected petitioner's application without investigating its merits or affording petitioner a hearing, as required by law, and that defendant's decision if sustained would enable defendant to favor any one licensed track to the exclusion of all other applicants.

The powers and authority of the defendant commissioner are set forth in section 9 of the racing act, PA 1933, No 199, as amended by PA 1947, No 107 (CL 1948, § 431.9 [Stat Ann 1953 Cum Supp § 18.949]), which among other things in part pro-

vides as follows (referring to applications such as the one involved in this case):

"Such application shall specify the day or days on which such racing is desired to be conducted or held, and such application shall be in such form and supply such data and information as the commissioner shall prescribe. The commissioner shall have the power to reject any application for a racing meet license for any cause which he may deem sufficient, which rejection may be appealed to the circuit and supreme court."

The defendant concedes that the "cause" spoken of in the act just cited shall be *reasonable*.

In *Hazel Park Racing Association* v. *Racing Commissioner*, 336 Mich 508, we say at p 512:

"Obviously the statute defining the powers and duties of the defendant with reference to the issuance of licenses may not be construed as vesting in him arbitrary authority to reject an application. The fact that an order made by him is specifically declared subject to judicial review is conclusive in this respect. An attempt to vest absolute and final authority might well be challenged on constitutional grounds."

In a letter from defendant to plaintiff dated January 22, 1954, defendant stated:

"There are several reasons for this decision. I don't feel that a half-mile track is large enough to provide the quality of racing which the Detroit public expects and is entitled to have.

"In addition the impracticability of flat racing at Northville was demonstrated by the meetings that were held there in 1939 and 1940. The average daily handle at the 1940 meeting of 11 days was under $12,000.

"Also the facilities for the public at Northville are not up to the standards of a modern racing plant such

as the public is accustomed to for thoroughbred racing in the Detroit area."

In his letter to plaintiff dated February 4, 1954 defendant said:

"I cannot justify any extension of the present 112 days allocated for flat racing in the Detroit area and I would be particularly reluctant to extend them at a track which has less to offer in the way of facilities for the public and for the horsemen than exists at the 2 racing plants which are now conducting thoroughbred racing."

In addition, in explanation of the statements in his letter as above quoted, the defendant claims that the Northville racing grounds are comparatively narrow, being 38 to 54 feet, that the width of the track at stating point would limit the number of entries to 8; that the owner of a horse in any of these small running meets, knowing his horse to be ready for a winning effort, could place a few large bets by himself and friends and the result would have a drastic effect on the odds offered on the race, and that there is a dispute over the favorability of location of the Northville race track.

Defendant further claims that several horsemen have volunteered the information to him that they do not wish to race at Northville and that the licensing of a running meet at Northville would be a step backward as far as the thoroughbred sport in the Detroit area is concerned. In his letter to plaintiff dated March 2, 1954, defendant states:

"I am sure there is nothing I can do for you on the Northville application, but I would be interested, nevertheless, in hearing your reasons for putting it in."

We have heretofore been required to pass upon, in some aspects, the statute on racing. See *Rohan* v. *Detroit Racing Association,* 314 Mich 326 (166 ALR

1246); *People* v. *Lightstone,* 330 Mich 672; *Hazel Park Racing Association* v. *Racing Commissioner, supra.*

We do not consider that there is capriciousness, prejudice or favoritism evidenced by defendant's refusal to issue the permit in this case. He finds undesirable a half-mile track for a running meet in the Detroit area in general and in particular at the Northville track, the narrowness of the starting point of which limits the entrants to 8, and finds that the Northville track has less to offer in the way of facilities than the 2 racing plants now conducting thoroughbred racing. Defendant also finds objectionable the extension of period for running races in the Detroit area. These matters are argued in this case; plaintiff's showing in respect to these disputed matters we would think to be insufficient to overcome the presumption of the regularity of defendant's action. See *Auditor General* v. *Ayer,* 109 Mich 694.

The presumption is that a public officer has performed his duty. See cases cited in 8 Callaghan's Michigan Digest, p 55, Evidence § 93. There is a sufficient showing of the reasonableness of defendant's action.

There is no ground afforded in the statements and claims of plaintiff which would require a finding by us of improper bias, prejudice or arbitrariness on the part of the commissioner defendant.

The writ is denied. No costs, a question of public importance being involved.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, DETHMERS, and KELLY, JJ., concurred.