## KELLY DOWNS, INC v RACING COMMISSION

1. ADMINISTRATIVE LAW—ADMINISTRATIVE PROCEDURES ACT—CONTESTED CASE—NOTICE—HEARING—FINDINGS OF FACT—RACETRACK LICENSE—LEGISLATURE.

   The Administrative Procedures Act which requires notice, hearing and findings of fact to be made in any contested case brought before an administrative agency does not apply in the case of an application for a racetrack license; the Legislature places no requirement of notice and hearing in a case which is not a contested case within the meaning of the statute (MCLA 24.201 et seq., 431.38[4]).

2. COURTS—JURISDICTION—CERTIORARI—AFFIRMATIVE RELIEF—APPEAL AND ERROR.

   A trial court exceeded its authority by granting a plaintiff affirmative relief and ordering the defendant racing commissioner to issue the plaintiff a racetrack license where the basis for its jurisdiction was in the nature of certiorari which is not a flexible remedy but permits only affirmation, reversal or quashing of the proceedings reviewed.

3. MANDAMUS—RACING LICENSE—CIRCUIT COURTS—COURT OF APPEALS —SUPREME COURT—COMMENCEMENT OF ACTION.

   A writ of mandamus to compel the state racing commissioner to issue a racetrack license may not be obtained from a circuit judge under any guise; all actions for mandamus against state officers shall be commenced in the Court of Appeals or in the Supreme Court (GCR 1963, 714.1).

4. ADMINISTRATIVE LAW—RACING COMMISSIONER—LICENSE APPLICATIONS—ARBITRARY AUTHORITY—INVESTIGATION—REQUIREMENTS —GOOD AND REASONABLE CAUSE.

   The racing commissioner is not vested with arbitrary authority to reject an application for a racetrack license, but is required to investigate each application and to grant a license if he is satisfied that the person and track meet all requirements under

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 2 Am Jur 2d, Administrative Law §§ 204, 572.
4 Am Jur 2d, Amusements and Exhibitions § 30.

the racing laws; an application can only be rejected for good and reasonable cause.

Appeal from Genesee, Ollie B. Bivins, Jr., J. Submitted Division 1 January 7, 1975, at Lansing. (Docket No. 19238.) Decided April 24, 1975.

Complaint by Kelly Downs, Inc., against the Michigan Racing Commission and Leo C. Shirley, Racing Commissioner of the State of Michigan, seeking superintending control to compel the issuance of a racetrack license. Judgment for plaintiff. Defendants appeal by leave granted. Affirmed in part, reversed in part, and remanded to the Racing Commission.

*Fenton, Nederlander, Dodge, Barris, Gribbs, Ritchie & Crehan, P. C.* (by *Richard A. Witte),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jann C. Ryan,* Assistant Attorney General, for defendants.

Before: DANHOF, P. J., and McGREGOR and D. F. WALSH, JJ.

McGREGOR, J. Defendants appeal by leave an order of the Genesee County circuit court, granting an order of superintending control to plaintiff, and directing the racing commissioner to grant a racetrack license to plaintiff as requested.

Plaintiff is a corporation organized and incorporated in recent years for the sole purpose of constructing and operating a racetrack in Richfield Township, Genesee County. On October 28, 1969, plaintiff filed with the Michigan Racing Commission a written application for a license to construct a horse racetrack in Richfield Township. The ap-

plication was approved by the Richfield Township Board, the City of Davison Chamber of Commerce, and the Davison Police Chief also indicated that he had no objection to the granting of the application. By letter, dated March 5, 1971, the racing commissioner denied plaintiff's application, stating:

"I have carefully studied and reviewed the expansion of pari-mutuel horse racing in areas of Michigan where it does not exist at the present time. This study and review includes the area in which you have applied for a pari-mutuel horse racetrack license.

"I believe at this time that it would not be in the best interests of horse racing in Michigan to extend existing facilities and programs. I say this primarily because of the action taken recently in expanding the racing program at existing tracks. As you know I approved for 1971, 138 additional racing dates. In my judgment expansion of this sport must be predicated upon sound evaluation of ongoing activities. Until such time as we are able to review and evaluate the effect of our expanded program, it would be unwise to authorize additional facilities.

"On the basis of the above I find it necessary to deny you a track and race meet license."

On October 31, 1972, plaintiff filed a second application with the Michigan Racing Commission. By letter dated December 13, 1972, the racing commissioner denied plaintiff's second application in the following language:

"Your letter of October 31, 1972, in which you made application for pari-mutuel harness racing dates in 1973 was hand delivered to Deputy Commissioner Richard O. Morris on October 31, 1972, and thereby met the requirements of Michigan Racing Act of 1959, No. 27, with regard to applying for a race meet license to conduct pari-mutuel horse racing in 1973.

"The administration at this time is not prepared to extend pari-mutuel horse racing into new areas of the state. On this basis I find it necessary to deny your request for a pari-mutuel horse race meet license at this time and racing dates in 1973.

"In the event you desire to discuss this with me personally, please feel free to call me at any time."

On March 12, 1973, 89 days after the denial of its application, plaintiff filed a complaint for superintending control in Genesee County Circuit Court, seeking to reverse the action of the defendant racing commissioner in denying plaintiff's second application for a license and an order directing the racing commissioner to issue the license, or, in the alternative, to reverse the commissioner's decision in denying the second application for a license. As part of its alternate prayer for relief, plaintiff also requested that the trial court issue an order permitting plaintiff to petition this Court for immediate issuance of a writ of mandamus directing issuance of the license by the commission. An order to show cause was granted by the trial court.

In his answer to the order to show cause, the racing commissioner sought dismissal of the complaint, claiming that Genesee County Circuit Court was without jurisdiction to grant the relief sought, that the defendant racing commissioner is a state officer against whom the circuit court is without authority to grant an order directing mandatory relief, that plaintiff does not have a clear legal right to the issuance of a track license by defendant, nor does defendant have a clear legal duty to issue such license to plaintiff, and that the grant or denial of a racing license by the racing commissioner is a matter solely within the discretion of the commissioner under the provisions of

§ 8 of the Racing Law of 1959, MCLA 431.31 *et seq.;* MSA 18.966(1) *et seq.*

On April 19, 1973, the trial court issued an opinion and order holding that defendant's denial of the racing license sought by plaintiff was arbitrary, capricious and unreasonable, and it was ordered therein that the denial of the license be vacated and set aside. However, the trial court denied that portion of the complaint in which plaintiff requested that the trial court issue to the racing commissioner an order directing that he issue the racing license sought by plaintiff. That relief was denied by the trial court in the following language:

"In view of the statute and/or Court Rule providing that no circuit court has jurisdiction to issue a writ of mandamus against a state officer, this court cannot order the State Racing Commissioner to issue the Kelly Downs, Inc. a license to construct and maintain a harness racing plant.

"The plaintiff may petition the Court of Appeals for the issuance of an order of mandamus."

However, following the issuance of that opinion, the trial court granted plaintiff's motion for rehearing and, on October 22, 1973, the court issued an opinion in which it held that the racing commissioner was an inferior tribunal within the meaning of GCR 1963, 711 and was, therefore, subject to the superintending control of the Genesee County Circuit Court. Accordingly, the trial court in that opinion, ordered that the racing commissioner issue a racetrack license to the plaintiff corporation. In directing the issuance of the license by the racing commissioner, the trial court said:

"Therefore, this Court is of the opinion that it has the authority and/or jurisdiction to issue its order of Superintending Control in the nature of certiorari.

"It is the order of this Court that the defendant issue to the plaintiff a race track license."

The Attorney General, on behalf of the racing commissioner, appeals from the trial court's order of April 19, 1973, in which the court found the racing commissioner's order denying a license to be unreasonable, arbitrary and capricious, and ordered that the denial be vacated and set aside. He also appeals from the order of October 22, 1973, in which the court ordered that the racing commissioner issue a racetrack license to plaintiff.

On appeal, defendants first claim that review of the action of the Racing Commissioner, in denying an application for a racetrack license under Section 8 of the Racing Law of 1959 (MCLA 431.38; MSA 18.966[8]) may be had only upon petition for review under the Administrative Procedures Act of 1969 (MCLA 24.304; MSA 3.560 [204]).

The grant or denial of an application for a racetrack license is governed by the provisions of MCLA 431.38(4); MSA 18.966(8), which provides:

"The track license application shall be in writing, shall show satisfactory financial responsibility, shall show the location of the track or of the proposed track and shall be accompanied by substantially detailed plans and specifications of the track, buildings, fences and other improvements. The application shall give the name and address of the applicant, and if a corporation shall state the place of its incorporation, and shall give any other information required by the regulations or by the commissioner. Upon the filing of the application and payment of the licensee fee, the commissioner shall make such investigation of the applicant and of the track or proposed track as he deems best, and if satis-

fied the person and the track meet all regulations, he shall grant a license for the track, designating therein the county or area of the licensee. The commissioner, if the track does not comply with the regulations, shall refuse the license but shall grant a license upon compliance with requirements imposed by him. After any license is issued, it may be revoked if the licensee after reasonable notice from the commissioner does not make such improvements or additions to the track as are necessary, or if the licensee wilfully violates the provisions of this act. The action of the commissioner in refusing or revoking a track license may be reviewed by the circuit court of the county in which the track is located. Either party may appeal from the circuit court to the supreme court. The applicant for the license shall also pay the license fees provided in this act. In a city area, there may be licensed not more than 3 tracks. A city area includes any city having a population of 1,000,000 or more, according to the latest or each succeeding federal decennial census, and includes the counties wholly or partly within a distance of 30 miles of the city limits of such city."

Defendants admit that, while this statute does not require an evidentiary hearing, it does require that the racing commissioner make such investigation as he deems best. Defendants allege that an investigation of such a complex application requires a holding of a commissioner's hearing to allow all interested parties the opportunity to testify. Defendants reason that, since plaintiff has not requested an evidentiary hearing, it has not exhausted its administrative remedies. Defendants conclude that plaintiff's proper remedy was a timely petition for review under the Administrative Procedures Act. (MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.).* The defendants, therefore, request that the case be remanded to the racing commission for a hearing and findings of fact.

We find that defendants' allegation, that all the

proceedings in the instant case should be governed by the provisions of the Administrative Procedures Act, to be without merit. The requirements of notice, hearing, and findings of fact referred to by the defendants, are required only in contested cases. The term "contested case" is defined in MCLA 24.203(3); MSA 3.560(103)(3) as follows:

"(3) 'Contested case' means a proceeding, including but not limited to rate-making, price-fixing, and licensing, in which determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing. When a hearing is held before an agency and an appeal from its decision is taken to another agency, the hearing and the appeal are deemed to be a continuous proceeding as though before a single agency."

MCLA 431.38(4); MSA 18.966(8)(4) does not require a hearing or the opportunity for a hearing upon an application for a racetrack license. This section merely provides that the commissioner shall investigate the application and the proposed track and satisfy himself that it meets all regulations. Since by definition a "contested case" is a proceeding in which a determination is required by law to be made by an agency after an opportunity for an evidentiary hearing, an application for a racetrack license is not a contested case within the definition set forth in MCLA 24.203(3); MSA 3.560(103)(3).

Further indication that the provisions of the Administrative Procedures Act do not apply in the instant case is found in MCLA 24.291(1); MSA 3.560(191)(1), which provides as follows:

"When licensing is required to be preceded by notice

and an opportunity for hearing, the provisions of this act governing a contested case apply."

Since the provisions of the Administrative Procedures Act governing contested cases apply in licensing situations only when licensing is required to be preceded by notice and an opportunity for hearing, and MCLA 431.38(4); MSA 18.966(8)(4) contains no requirement of notice and hearing, it is obvious that the proceedings in the instant case are not governed by the provisions of the Administrative Procedures Act.

We further find that the Legislature expressly provided that the racetrack licensing provision should not fall under the purview of the Administrative Procedures Act.

MCLA 431.36; MSA 18.966(6) provides that the commissioner shall prescribe rules, regulations and conditions, in accordance with MCLA 24.71 to 24.82, and subject to MCLA 24.101 to 24.110, under which all horse racing shall be conducted. (The sections referred to have been superseded by the Administrative Procedures Act of 1969, MCLA 24.201 *et seq.;* MSA 3.560[101] *et seq.)*

The Legislature was aware of the Administrative Procedures Act when it drafted and adopted the racing law. Other sections of the racing law specifically provide for notice and hearings upon suspension of a license. MCLA 431.41; MSA 18.966(11), which provides for occupational licenses for jockeys, etc., provides also:

"The commissioner shall give prompt notice of a time and place for the hearing, at which he shall hear the complainant and the applicant or occupational licensee in reference to the complained of act or omission.

\* \* \*

"Upon a refusal by the racing commissioner to issue

an occupational license, no writ of mandamus shall be directed to the racing commissioner until a hearing is held and findings issued thereon. The hearing shall be held and governed pursuant to the law and rules covering hearings held on suspension or revocation of licenses. *This section shall not impair or change appeals provided for in section 8 of this act.*" (Emphasis supplied.)

By its terms, actions under this statute are contested cases. The underscored sentence clearly demonstrates that the Legislature expressly provided that this statutory provision shall not be construed as altering Section 8 of the racing law (MCLA 431.38; MSA 18.966[8]). This indicates the legislative intention not to require a hearing or the opportunity for hearing with regard to the issuance of racetrack licenses. It further indicates that the Legislature was aware of the fact that this provision would fall under the purview of the Administrative Procedures Act, and wanted to express the legislative intention that this section not alter the racetrack license provisions.

Defendants next question whether a circuit court, in superintending control proceedings, either in the nature of mandamus or certiorari, may mandate the issuance of a racetrack license, issuable under the provisions of MCLA 431.38; MSA 18.966(8).

The trial court, after determining that the commissioner's denial of plaintiff's application was arbitrary, capricious and unreasonable, stated that it was without power to issue a writ of mandamus against a state officer and, therefore, declined to grant plaintiff any affirmative relief. However, following a rehearing, the court issued a supplemental opinion in which it found the racing commissioner to be an "inferior tribunal" within the

meaning of GCR 1963, 711 and thus, subject to the superintending control of the court. The court, in its supplemental opinion, concluded:

"Therefore, this court is of the opinion that it has the authority and/or jurisdiction to issue its order of superintending control in the nature of certiorari.

"It is the order of this court that the defendant issue to the plaintiff a racetrack license."

While the trial court had jurisdiction to issue its order of superintending control in the nature of certiorari under GCR 1963, 711.1, the court exceeded its authority by granting plaintiff affirmative relief in ordering the defendant to issue the plaintiff a racetrack license. Certiorari is not a flexible remedy but permits only affirmation, reversal or quashing of the proceedings reviewed. *Constantine v Liquor Control Commission,* 374 Mich 259; 132 NW2d 146 (1965).

The relief granted by the trial court, while labelled certiorari, was in effect mandamus. However, the state racing commissioner is a state officer. *Mt. Clemens Harness Association v Racing Commissioner,* 360 Mich 467; 104 NW2d 363 (1960). MCLA 600.4401; MSA 27A.4401 clearly provides:

"All actions for mandamus against state officers shall be commenced in the Court of Appeals or in the Supreme Court, as provided by rules by the Supreme Court." (See also GCR 1963, 714.1.)

A writ of mandamus to compel the state racing commissioner to issue a racetrack license may not be obtained from a circuit judge under any guise. *Lepofsky v City of Lincoln Park,* 48 Mich App 347; 210 NW2d 517 (1973), *Mt. Clemens Harness Asso-*

*ciation, supra.* Therefore, we reverse the trial court's order that the defendant issue to the plaintiff a racetrack license.

In its prayer, plaintiff has petitioned this Court to issue an order of mandamus, under GCR 1963, 714, in the event that the trial court lacked jurisdiction to compel the defendant to issue plaintiff a racetrack license. While we affirm the trial court's ruling, that the denial of plaintiff's application was arbitrary and capricious, we decline at this time to issue a writ of mandamus ordering the defendant to grant plaintiff's application for a racetrack license.

Under MCLA 431.38; MSA 18.966(8), the commissioner is required to make an investigation of the application for a racetrack license and is required to grant the license if he is satisfied that the person and track meet all requirements under the racing laws. This statute does not, however, vest the commissioner with arbitrary authority to reject an application. An application can only be rejected for good and reasonable cause. *Leach v Racing Commissioner,* 340 Mich 202; 65 NW2d 746 (1954), *Hazel Park Racing Association, Inc v Racing Commissioner,* 336 Mich 508; 58 NW2d 241 (1953).

The case at bar is, in many ways, similar to the situation presented in *South Haven Racing Association, Inc v Racing Commissioner,* 42 Mich App 125; 201 NW2d 314 (1972). In the case at bar and in *South Haven,* the plaintiffs received identical letters from the racing commissioner in which the commissioner denied their licenses pending an evaluation of the expended racing program for 1971 at the existing tracks. The Court held that this *interlocutory order* was proper under the

commissioner's "necessary and proper" power granted to him in MCLA 431.36; MSA 18.966(6) and under the regulations which the commissioner has prescribed. (1964–1965 AACS, R431.67 [Rule 339]). Since the denial of the license in *South Haven, supra,* was only an interlocutory ruling, the Court ordered the defendant to make a final disposition on plaintiff's petition within 30 days of the date of the release of that opinion.

In the case at bar, plaintiff filed a second application with the racing commission which was likewise denied. The commissioner's letter denying the second application clearly was not interlocutory. The letter stated, in part:

"The Administration at this time is not prepared to extend pari-mutuel horse racing into new areas of the state. On this basis I find it necessary to deny your request for a pari-mutuel horse race meet license at this time and racing dates in 1973."

We hold that the defendants' denial of plaintiff's application was not based upon good and reasonable cause. The commissioner's determination was not based upon the relative merits of plaintiff's application; therefore, the defendant failed to investigate and evaluate plaintiff's application, as required by statute.

The last application submitted by the plaintiff was filed in October, 1972. Quite possibly, circumstances have changed since that date which would make plaintiff ineligible for the license which it seeks. Therefore, we hereby order the defendant to make a proper evaluation of the application submitted by the plaintiff and issue a final ruling in this matter, together with a statement of reasons

therefor,[1] within 30 days of the date of the release of this opinion. We retain jurisdiction in this matter and defer our decision as to whether to grant mandamus until we have had an opportunity to review the commissioner's final disposition and the basis therefor.

Affirmed in part, reversed in part, and remanded to the Michigan Racing Commission for a final disposition consistent with this opinion. No costs, a public question being involved.

---

[1] *See Mt. Clemens Harness Association v Racing Commissioner,* 360 Mich 467; 104 NW2d 363 (1960), and *Hazel Park Racing Association, Inc v Racing Commissioner,* 336 Mich 508; 58 NW2d 241 (1953). Should the commissioner deny plaintiff's application, his reasons therefor must be at least as explicit as those recited in these cases. We further caution the commissioner against the imposition of unauthorized conditions as a basis for denial of plaintiff's license. *Hazel Park Racing Association, Inc, supra.*