*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETITION OF EATON COUNTY
TREASURER FOR FORECLOSURE.

---

EATON COUNTY TREASURER,

   Petitioner-Appellee,

v

ANDREW ROTH,

   Respondent-Appellant.

UNPUBLISHED
January 13, 2026
2:30 PM

No. 370480
Eaton Circuit Court
LC No. 20-000403-CZ

---

*In re* PETITION OF EATON COUNTY
TREASURER FOR FORECLOSURE.

---

EATON COUNTY TREASURER,

   Petitioner-Appellee,

v

NANCY VOGL, Personal Representative of the
ESTATE OF SALLY JOAN RANDALL, and
STACIA MATHIAS, Personal Representative of the
ESTATE OF RANDY MATHIAS,

   Intervening Plaintiffs-Appellants.

No. 370482
Eaton Circuit Court
LC No. 21-000537-CZ

---

Before: SWARTZLE, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

These consolidated appeals[1] involve claims for the distribution of proceeds remaining from the tax-foreclosure sales of properties after the alleged satisfaction of delinquent property taxes, interest, penalties, and fees. In Docket No. 370480, respondent, Andrew Roth, appeals by right the circuit court order denying his motion to disburse remaining proceeds. In Docket No. 370482, intervening plaintiff Nancy Vogl, personal representative of the Estate of Sally Joan Randall (the Randall Estate), and intervening plaintiff Stacia Mathias, personal representative of the Estate of Randy Mathias (the Mathis Estate), appeal by right a separate order denying their motions to disburse remaining proceeds. For the reasons stated herein, we affirm the circuit court's order in Docket No. 370480. In Docket No. 370482, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. STATUTORY BACKGROUND

The Michigan Supreme Court held in *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 484; 952 NW2d 434 (2020), that former owners of properties sold via tax-foreclosure for more than what was owed in taxes, interests, penalties, and fees had "a cognizable, vested property right to the remaining proceeds resulting from the tax-foreclosure sale of their properties." Because this right continued to exist after fee simple title to the properties vested with the foreclosing governmental unit (FGU), the FGU's "retention and subsequent transfer of those proceeds into the county general fund amounted to a taking of plaintiffs' properties" under the Takings Clause of Michigan's Constitution. *Id*. at 484-485, citing Const 1963, art 10, § 2. Accordingly, former owners were entitled to just compensation in the form of the return of the remaining proceeds. *Id*. at 485. When the Court decided *Rafaeli*, the General Property Tax Act (GPTA), MCL 211.1 *et seq*., did not provide a means by which property owners could recover their remaining proceeds.

In response to *Rafaeli*, the Michigan Legislature passed 2020 PA 255 and 2020 PA 256, which were given immediate effect on December 22, 2020. MCL 211.78t, a provision added to the GPTA by 2020 PA 256, provides the exclusive means for former owners to claim and receive any applicable "remaining proceeds"[2] from the tax-foreclosure sales of their former properties. This Court held in *In re Petition of Muskegon Co Treasurer for Foreclosure*, 348 Mich App 678; 20 NW3d 337 (2023), that MCL 211.78t was a duly enacted statute that passed constitutional muster. *Id.* at 703-704.

## II. RELEVANT FACTS AND PROCEEDINGS

In Docket No. 370480, the circuit court entered a judgment of foreclosure against respondent's property on February 17, 2021, effective March 31, 2021. It was undisputed that respondent did not file Form 5743 pursuant to MCL 211.78t(2) to notify petitioner of respondent's intent to claim an interest in any remaining proceeds until February 2022, well beyond the statute's July 1, 2021 deadline. Respondent moved in the circuit court for the disbursement of remaining

---

[1] *In re Petition of Eaton Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered October 7, 2024 (Docket Nos. 370480 and 370482).

[2] *Rafaeli* refers to "surplus proceeds," whereas MCL 211.78t refers to "remaining proceeds." We will use these terms interchangeably.

proceeds. Petitioner opposed the motion on the basis that respondent failed to file Form 5743 by the statutory deadline. Following a hearing on respondent's motion, the circuit court denied the motion on the basis that respondent had not complied with MCL 211.78t's applicable notice requirement.

In Docket No. 370482, Sally Joan Randall owned property in Eaton County when she died in 2020. Nancy Vogl, Sally's daughter and personal representative of the Randall Estate, contacted petitioner and told him that she and her brother wanted to give the property to the county. Petitioner informed her that the county could not simply accept property and that the property would have to go through the foreclosure process. A judgment of foreclosure entered against the property on February 16, 2022. Three months later, petitioner and Delta Township, where the property was located, entered into a consent agreement for demolition because the condition of the structure on the property rendered it a public nuisance and a hazard to public health, safety, and welfare. The demolition order provided that petitioner or subsequent holders of title to the property, or both, would demolish all structures on the property because they were hazardous to public safety. Petitioner obtained an estimate from a company indicating that demolition would cost $81,926.63. This amount was added to the minimum bid. At the October 2022 tax-foreclosure auction, a buyer paid $83,105: $1,179 for the property and $81,926.63 as a "guaranty" to ensure compliance with the demolition order.[3] Once the buyer demolished the hazardous structure, petitioner refunded his $81,926.63 by check.

Petitioner sent the Randall Estate notice under MCL 211.78t(3) stating that there were no remaining proceeds to distribute because the $1,179 sales price for the property was well below the minimum bid. Instead of remaining proceeds, there was a deficit of $13,899.99. Notwithstanding this notice, the Randall Estate moved the circuit court to disburse remaining proceeds of $63,292.71. The Randall Estate argued that the property sold for $83,105, all of which petitioner was required by MCL 211.78m(8) to place in a restricted account and pay in accordance with the priorities listed in that statute. The top three priorities, in order, were the county where the property was located, the FGU, and the Randall Estate. The Randall Estate contended that the $83,105 sales price, minus unpaid taxes, interests, penalties, and fees, and minus petitioner's 5% sales commission left remaining proceeds of $63,292.71. At the hearing on the Randall Estate's motion to disburse remaining proceeds, petitioner explained the circumstances surrounding the demolition order, the estimated cost of demolition, the property buyer's $81,926.63 guaranty, the buyer's satisfaction of the demolition order, and petitioner's return of the guaranty to the buyer. The circuit court rejected the Randall Estate's argument, adopted petitioner's reasoning, and denied the estate's motion to disburse remaining proceeds.

Also in Docket No. 370482, a judgment of foreclosure was entered against property owned by decedent Randy Mathias on February 11, 2021, effective March 31, 2021. The Mathias Estate property sold at a tax-foreclosure auction for $6,723. After deducting the property's unpaid taxes,

---

[3] We note that petitioner attempted to sell the property at auction the previous month, with the requisite amount of the minimum bid being $15,020.04 (that reserve price also included the above-referenced guaranty in the amount of $81,926.63). However, the property did not sell in the first auction.

interest, penalties, and fees, as well as petitioner's 5% commission, petitioner sent the Mathias Estate a notice to file a motion with the circuit court to claim $1,267.53 in remaining proceeds. When the Mathias Estate moved in the circuit court for an order disbursing the remaining proceeds, petitioner opposed the motion on the bases that no proceeds remained. According to petitioner, the software program used to create the notices to file a motion in the circuit court to claim remaining proceeds did not pick up additional taxes and fees that were included in the minimum bid. At the time of the foreclosure, the sum of the property's delinquent taxes, interest, penalties and fees was $5,119.32 (the "minimum bid"); this was the amount reported on the notice that petitioner sent to the Mathias Estate in compliance with MCL 211.78t(3). However, to this amount, petitioner added $239.70 in taxes and $1,363.79 in expenses, thereby bringing the minimum bid up to $6,723, the exact amount for which the property sold at auction.

At the hearing on the Mathias Estate's motion for disbursement, the circuit court asked petitioner why the Mathias Estate should not get the benefit of the error. Petitioner responded that the notice that petitioner sent to the estate stated that the amount of remaining proceeds shown "may be subject to additional deductions as allowed by statute." Additionally, the Mathias Estate argued that it should not be liable for $239.70 in property taxes for April to September, after the effective date of the foreclosure. Petitioner's attorney dismissed the estate's argument, stating that the correct person paid the taxes, and it did not matter whether the taxes were paid separately or as part of the minimum bid. The Mathias Estate also challenged the imposition of an $895 charge for "staff time," questioning the charge's reasonability and implying that petitioner was not using the fees allowed by the statutory scheme to pay expenses. The circuit court adopted petitioner's rationale and denied the Mathias Estate's motion to disburse.

Respondent and the Estates now appeal.

## III. DISCUSSION

### A. STANDARDS OF REVIEW

We review de novo questions of constitutional law. See *Bonner v City of Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014). We also review de novo whether a circuit court properly interpreted and applied the relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). A circuit court's factual findings are reviewed for clear error. *Muskegon Treasurer*, 348 Mich App at 687. "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *In Forfeiture of 2000 GMC Denali and Contents*, 316 Mich App 562, 583; 892 NW2d 388 (2016) (quotation marks and citation omitted).

### B. DOCKET NO. 370480

Respondent first implies that the trial court erred by relying on *Muskegon Treasurer* to deny his motion to disburse remaining proceeds, because that case did not address the issues that he raises. Specifically, respondent claims that *Muskegon Treasurer* did not address the unique language in the Takings Clause of Michigan's Constitution, Const 1963, art 10, § 2. He also claims that *Muskegon Treasurer* did not address whether the FGU's actual notice about how to recover remaining proceeds satisfied due process. Rather, this Court incorrectly assumed that notice was

-4-

adequate. Respondent contends that *Muskegon Treasurer* is not binding on these issues, nor does it provide guidance. Respondent is incorrect.

"A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis." MCR 7.215(C)(2). Although "[s]tare decisis ensures uniformity, certainty, and stability in the law," precedents "can be revisited if wrongly decided." *Stokes v Swofford*, 514 Mich 423, 451; 22 NW3d 97 (2024) (quotations marks and citation omitted). "A decision is wrongly decided if it misunderstood or misconstrued a plainly worded statute or if it has fallen victim to a subsequent change in the law." *Id*. (quotations marks and citation omitted).

In *Muskegon Treasurer*, this Court observed that, " '[a]lthough the courts of this state have applied the state and federal Takings Clauses coextensively in many situations, this Court has found that Const 1963, art 10, § 2 offers broader protection than do US Const, Ams V and XIV.' " *Muskegon Treasurer*, 348 Mich App at 699-700, quoting *AFT Mich v Michigan*, 497 Mich 197, 217; 866 NW2d 782 (2015) (citations omitted). However, because the respondents in *Muskegon Treasurer* did not argue that Michigan's Takings Clause should be applied any differently than its federal counterpart, this Court concluded that it did not need to ask whether the two Takings Clauses should be applied differently, and this Court considered the two clauses collectively. *Muskegon Treasurer*, 348 Mich App at 700.

In the present case, respondent argues that Michigan's Takings Clause should be applied differently because, unlike its federal counterpart, Michigan's Takings Clause requires just compensation *before* the government takes private property for public use. However, respondent does not offer a cogently developed explanation of the practical effect of that difference in the present case. To the extent that respondent is suggesting that petitioner should have paid just compensation for respondent's remaining proceeds before taking respondent's remaining proceeds, this argument makes no sense. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to . . . unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *ER Drugs v Dep't of Health and Human Servs*, 341 Mich App 133, 146-147; 988 NW2d 826 (2022) (quotation marks and citation omitted). Respondent also argues that this Court's takings analysis in *Muskegon Treasurer* does not apply because its reliance on *Nelson v City of New York*, 352 US 103; 77 S Ct 195; 1 L Ed 2d 171 (1956), was misplaced. Respondent asserts that *Tyler v Hennepin Co*, 598 US 631; 143 S Ct 1369; 215 L Ed 2d 564 (2023), and *Knick v Scott Twp*, 588 US 180; 139 S Ct 2162; 204 L Ed 2d 558 (2019), question *Nelson* and compel a different result, that the *Rafaeli* Court did not find *Nelson* helpful, and that this Court failed to understand the effect of the procedural differences between the foreclosure scheme at issue in *Nelson* and the statutory scheme established by 200 PA 256. Because this Court has already considered and rejected these arguments, we need not address them now. See, e.g., *Muskegon Treasurer*, 348 Mich App at 701-703.

Respondent next argues that *Muskegon Treasurer* does not govern with respect to the adequacy of notice because the attorney for the respondents in that case conceded that notice was adequate. On the basis of that concession, this Court presumed that notice was adequate and declined analysis of the constitutional sufficiency of the actual notice provided to the respondents. Again, respondent is incorrect. The attorney for the respondents in *Muskegon Treasurer* argued that notice was *not* sufficient, *id*. at 693 n 1, and this Court *did not* presume that the notice the

respondents received, informing them of their right to recover remaining proceeds and how to enforce that right, was adequate. In fact, this Court considered at length whether the statutorily required notice, as well as the notice actually provided, was constitutionally sufficient. *Id*. at 695-698.

Because respondent has not shown that *Muskegon Treasurer* is not binding with respect to the issues that he raises, he has not shown that the circuit court's reliance on *Muskegon Treasurer* (to deny his motion to disburse) was erroneous.

Respondent next implies that petitioner's compliance with MCL 211.78 results in a civil forfeiture of foreclosed owners' remaining proceeds. This Court has already rejected attempts to frame an FGU's compliance with MCL 211.78 as resulting in an unconstitutional taking, *id*. at 701, or unjust enrichment. We also reject respondent's attempt to frame an FGU's compliance with MCL 211.78 as resulting in a civil forfeiture, not least of all because the failure to pay property taxes is not inherently a criminal offense under Michigan law. See *Rafaeli*, 505 Mich at 450.

Finally, respondent advances a bevy of arguments that this Court has already rejected. Respondent contends that MCL 211.78t(2)'s July 1 deadline for submitting Form 5743 is an unreasonable and unjustified procedural restriction that divests foreclosed owners of the ability to enforce their constitutional right to remaining proceeds. He argues that foreclosed owners do not have a claim for remaining proceeds until after the tax-foreclosure sale of their properties, that the requirement to give notice that they intend to retain their interests in surplus proceeds is contrary to the "initiating burden" that Takings Clauses place on the government. Respondent also insinuates that the right to surplus proceeds is a fundamental property right and, therefore, that any conditions placed on this right must pass strict scrutiny. Having already considered and rejected the substance and premises of these arguments in *Muskegon Treasurer*, we see no need to do so here. See *Muskegon Treasurer*, 348 Mich App at 694, 696, 698-699, 704; see also *In re Petition of Barry Co Treasurer for Foreclosure*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362316); slip op at 4.

Lastly, respondent offers a due-process analysis under *Mathews v Eldridge*, 424 US 319, 334-335; 96 S Ct 893; 47 L Ed 2d 18 (1976), and suggests that remaining proceeds should simply be held in escrow for the benefit of foreclosed owners until the owners claim them. After conducting a due-process analysis using the *Eldridge* factors, this Court concluded that the statutory scheme set up by our Legislature for recovering remaining process, when followed by FGUs, satisfies due process. *Muskegon Treasurer*, 348 Mich App at 695-696. This Court also observed that, "[s]o long as the statutory system adopted by our Legislature comports with due process—as MCL 211.78t does—whether such a scheme makes sense, or whether a 'better' scheme could be devised, are policy questions for the Legislature, not legal ones for the judiciary." *Id*. at 697.

For the foregoing reasons, respondent has not shown that the circuit court erred by relying on *Muskegon Treasurer* to deny his motion to disburse. *Muskegon Treasurer* has not been superseded by the federal cases that respondent cites, and we reject respondent's insinuation that the statutory scheme that allows foreclosed property owners to recover remaining proceeds to which they have a legal right actually results in civil forfeiture.

## C. DOCKET NO. 370482

### 1. THE RANDALL ESTATE

The Randall Estate first argues that the circuit court erred when it allowed petitioner to disburse proceeds from the sale of the Randall Estate's foreclosed property other than in accordance with the mandatory priorities listed in MCL 211.78m(8). This argument is without merit.

MCL 211.78m(8) states, in relevant part, that the FGU "shall deposit the proceeds from the sale of property under this section into a restricted account designated as the 'delinquent tax property sales proceeds for the year___'." The first three distribution priorities, MCL 211.78m(8)(a) through (c), are: (1) the county where the foreclosed property is located, (2) the FGU, and (3) those entitled to remaining proceeds under § 78t.

Contrary to the Randall Estate's assertions, petitioner arguably strictly complied with MCL 211.78m(8). As noted, MCL 211.78m(8) requires FGUs to deposit the "proceeds from the sale of the property" into a specifically designated restricted account. Although the GPTA does not define "proceeds," we can easily ascertain the meaning of that term by analyzing the definition of "remaining proceeds" in MCL 211.78t(12)(b), which states that, as used in this section,

> "Remaining proceeds" means the amount equal to the difference between the amount paid to the foreclosing governmental unit for a property due to the sale or transfer of the property under section 78m and the sum of all of the following:
>
> (i) The minimum bid under section 78m.
>
> (ii) All other fees and expenses incurred by the foreclosing governmental unit pursuant to section 78m in connection with the forfeiture, foreclosure, sale, maintenance, repair, and remediation of the property not included in the minimum bid.
>
> (iii) A sale commission payable to the foreclosing governmental unit equal to 5% of the amount paid to the foreclosing governmental unit for the property.

Because the Legislature chose to define "remaining proceeds" as the difference between the amount paid to the FGU for a sale or transfer of the property under 78m and the sum of various figures, we can define "proceeds" as "the amount paid to the foreclosing governmental unit for a property due to the sale or transfer of the property under section 78m."[4]

Although the Randall Estate maintained that its foreclosed property sold for $83,105, it did not rebut the affidavit filed by petitioner indicating that the actual amount of the sale price was

---

[4] Certainly, the Legislature was free to separately define the term "proceeds," but it chose not to do so.

$1,179, nor did it rebut evidence that $81,926.63 was security posted for the demolition of a structure on the property, including the affidavit submitted by petitioner.[5]  Thus, the facts show that $81,926.63 of the $83,105 that petitioner received from the auction was unrelated to the monetary value of the property and was, instead, a *liability* of the property.  Importantly, these funds were not "proceeds from the sale of the property," because they did not constitute an amount paid to the FGU "due to the *sale* or *transfer* of the property under section 78m."  Rather, the $81,926.63 was security posted with the FGU in order to ensure removal of blight on the property, which security was returned following removal of the blight.  Put another way, the $81,926.63 was never actually "paid" to petitioner as a part of the *sale* of the property; again, that amount was posted as security and returned following removal of the blight.[6]  Consequently, petitioner was not required to deposit the $81,926.63 into its restricted delinquent tax property sales account and distribute it in accordance with the priorities listed in MCL 211.78m(8) (i.e., there were never any "proceeds" to distribute from the security posted).  In light of the facts before the circuit court, the court did not err by denying the Randall Estate's motion for the disbursement of remaining proceeds.

The Randall Estate also argues that the circuit court erred by not requiring, or allowing, testimony at the hearing on the estate's motion to disburse remaining proceeds.  We disagree.  At the hearing for the motions to disburse proceeds, which began on August 30, 2023, the Randall Estate said that it wished to take testimony in support of its position.  The Court instructed the parties to file briefs on the pertinent issues and indicated that it would review those briefs before deciding whether it needed to hear testimony.  The hearing subsequently resumed on March 12, 2024, at which time the court said it was not aware of there being any question of fact on any material issue before it, but that it would nonetheless allow the Randall Estate to mark exhibits and take testimony if counsel could articulate such a material question of fact.  The estate could not, nor has the estate identified a material factual dispute on appeal.  Under these circumstances, we cannot say that the trial court erred by not allowing testimony.

In light of the facts before the circuit court, the circuit court did not err by rejecting the Randall Estate's argument that petitioner violated MCL 211.78m(8) or by denying the estate's motion for the disbursement of remaining proceeds.  Nor did the circuit court err by prohibiting

---

[5] At the hearing conducted on March 12, 2024, counsel for petitioner explained that the $81,926.63 was accepted as a performance bond that was deposited into a trust account and returned to the purchaser after the purchaser performed the required demolition, i.e., after the purchaser removed the blight.  Counsel for the Randall Estate essentially argues that no document called a "performance bond" ever existed in this matter.  While "performance bond" is one of the ways in which petitioner's counsel described the $81,926.63, he also referred to the money as a "guaranty," and a "demolition payment bond." A fair reading of the record shows that, regardless of the term used, the money operated to ensure compliance with the demolition order, i.e., it was not part of the sale price.

[6] On the record, the trial court correctly noted that the $81,926.63 "had nothing to do with the sale price of the property."

the Randall Estate from taking testimony at the hearing on the estate's motion to disburse remaining proceeds, because the estate did not show that there were any actual factual disputes.

## 2. THE MATHIAS ESTATE

The Mathias Estate, as well as the Randall Estate, argue that the circuit court erred by not requiring petitioner to prove that it offset incurred costs against the statutory fees to which it was entitled before allowing petitioner to impose additional charges. We disagree.

"It is an elementary rule of statutory interpretation that courts cannot and should not add requirements to the statute that are not found there." *Bronson Health Care Group, Inc v Esurance Prop and Cas Ins Co*, 348 Mich App 428, 443; 19 NW3d 151 (2023) (quotation marks and citation omitted). If the Legislature does not require FGUs to render an accounting to foreclosed property owners, then the circuit court did not err by declining to impose such a requirement. See *id*.

The Mathias Estate next argues that the circuit court erred by allowing petitioner to charge the Mathias Estate for taxes that fell due after the effective date of foreclosure. This argument has merit.

MCL 211.78m(16)(c) defines "minimum bid" as

> the minimum amount established by the foreclosing governmental unit for which property may be sold or transfer under subsections (1) to (3). The minimum bid must include all of the delinquent taxes, interest, penalties, and fees due on the property, and may include any additional expenses incurred by the foreclosing governmental unit in connection with the forfeiture, foreclosure, maintenance, repair, or remediation of the property or the administration of this act for the property, including but not limited to, foreclosure avoidance, mailing, publication, personal service, legal personnel, outside contractor, and auction expenses.

As noted, petitioner is required to include in the minimum bid "all of the delinquent taxes, interest, penalties, and fees due on the property . . . ." MCL 211.78m(16)(c). Petitioner added unpaid taxes covering April to September to the minimum bid for the Randall Estate's foreclosed property. Although no year was mentioned, the Mathias Estate's attorney assumed, and petitioner did not dispute, that the taxes were for 2022. If so, these taxes would not be considered "delinquent" until March 1, 2023. See MCL 211.78a(2). Although petitioner's attorney dismissed the estate's position at oral argument, stating that it did not matter whether the taxes were paid separately or as part of the minimum bid, it does make a difference. Adding the $239.70 to the minimum bid instead of requiring the buyer to pay the taxes separately reduced the Mathias Estate's remaining proceeds by $239.70. Therefore, we reverse the circuit court's order denying the Mathias Estate's motion to disburse remaining proceeds and remand for entry of an order awarding the Mathias Estate $239.70 in remaining proceeds.

Lastly, the Mathias Estate argues that the circuit court erred by allowing petitioner to charge the estate $895 for "staff time." Petitioner responds by arguing, *inter alia*, that only the minimum bid was accepted for the Mathias property, meaning there were no remaining proceeds from the sale.

Under Michigan law, a county treasurer is considered a public officer, MCL 15.181(e), and, in the absence of contrary evidence, public officers are presumed to act in accordance with the law and to perform their duties properly. See *Leach v Inglis*, 340 Mich 202, 206; 65 NW2d 746 (1954); *Casterline v Meyers*, 226 Mich 155, 157; 197 NW 561 (1924). Overcoming the presumption that officials discharged their public duties requires "substantial proofs to the contrary." *People v Craig*, 342 Mich App 217, 227; 994 NW2d 792 (2022) (quotation marks and citation omitted). A flat charge of $895 added to "everyone's account" would raise suspicion. However, on this limited lower court record, including documents attached to petitioner's response to the Mathias Estate's underlying motion, which indicate that the charge pertained to fees included in the minimum bid, and which were unrebutted by the Mathias Estate, we cannot say that the Mathias Estate presented "substantial proof" that petitioner did not properly and regularly perform his duty.

We affirm in Docket No. 370480. In Docket No. 37482, we affirm that portion of the circuit court's order denying the Randall Estate's motion to disburse remaining proceeds. However, we reverse that portion of the order denying the Mathias Estate's motion to disburse remaining proceeds and remand for the trial court to enter an order awarding the Mathias Estate $239.70 in remaining proceeds.

Affirmed, affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace