HAZEL PARK RACING ASSOCIATION, INC., *v.*
RACING COMMISSIONER.

1. LICENSES—HORSE RACING MEETS—STATE RACING COMMISSIONER—
REVIEW.

   The State racing commissioner is not vested with arbitrary
   authority to reject an application for license to conduct horse
   racing meets, especially in view of statutory provision for
   judicial review of his action (CL 1948, § 431.9).

2. SAME—HORSE RACING MEETS—STATUTES—IMPOSITION OF UNAU-
THORIZED CONDITIONS.

   The duty of the State racing commissioner to perform the func-
   tions of his·office for the benefit of the public does not em-
   brace the refusal of the granting of a license to conduct horse
   racing meets unless the corporate applicant performed certain
   conditions with which it could not comply nor compel perform-
   ance and which the statute does not authorize the racing
   commissioner to impose (CL 1948, § 431.1 *et seq.*).

3. SAME—UNAUTHORIZED CONDITIONS—HORSE RACING MEETS—STOCK-
HOLDERS OF CORPORATE APPLICANT FOR LICENSE.

   Refusal of State racing commissioner to grant plaintiff corporate
   applicant a license to conduct horse racing meets in this State
   unless certain minority stockholders disposed of their stock
   and voting rights because "through family relationships or
   adverse police records (they) were unacceptable to the racing
   commission as part owners of a licensed racing association"
   *held,* to constitute a condition which the commissioner was

---

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 33 Am Jur, Licenses §§ 52, 59–64.
[1–5] Validity of statute or ordinance vesting discretion as to
   license in public officials without prescribing a rule of action.
   12 ALR 1435; 54 ALR 1104; 92 ALR 400.
   Right of corporation to engage in business, trade, or activity re-
   quiring license from public. 165 ALR 1098.
   What amounts to conviction within statute making conviction
   ground for refusing to grant license or special privilege. 113
   ALR 1179.
[4–6] 34 Am Jur, Mandamus § 184.
[6] 34 Am Jur, Mandamus §§ 2, 4, 42.
[7] 14 Am Jur, Costs § 91.

without statutory authority, to impose, especially in view of the lack of evidence that any such stockholders were presently participating in any way in criminal activities, that such stockholders are active in the management of the corporation or that they, or any of them, are directing its policies or activities and corporation itself is not accused of improper conduct that is inimical to the welfare of the people of this State (CL 1948, § 431.1 et seq.).

4. MANDAMUS—LICENSES—STATUTES—ADEQUACY OF REMEDY.

Mandamus is a proper remedy to compel the State racing commissioner to issue a license to conduct racing meets, where the applicant has complied with all statutory requirements for a license and yet is denied a license because of noncompliance with conditions which the commissioner is without authority to impose and any other remedy is inadequate to fully and properly protect its rights (CL 1948, § 431.1 et seq.).

5. SAME—TIME—ABSENCE OF FORMAL ORDER.

Objection that mandamus proceeding was prematurely brought because State racing commissioner had not formally denied plaintiff's application for a license to conduct horse racing meets for the 1953 season held, without merit, where defendant had made it clear he would not issue a license unless plaintiff complied with conditions which defendant was without authority to impose and it was necessary to make preparations for the season and enter into contracts incident to the contemplated operation (CL 1948, § 431.1 et seq.).

6. SAME—PURPOSE OF WRIT.

A writ of mandamus issues for the purpose of enforcing specific relief, where practicable, to a person clearly entitled thereto when there is a failure of other remedies to do justice.

7. COSTS—MANDAMUS—PUBLIC QUESTION—RACING MEET LICENSE.

No costs are allowed in mandamus proceeding to compel State racing commissioner to issue plaintiff a license to conduct horse racing meets, where a question of public interest is involved (CL 1948, § 431.1 et seq.).

Mandamus by Hazel Park Racing Association, a Michigan corporation, against James H. Inglis, Racing Commissioner of Michigan, to compel the issuance of a license to hold racing meets. Submitted April 16, 1953. (Calendar No. 45,808.) Writ granted May 4, 1953.

*Stanley E. Beattie* and *John R. Monaghan,* for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Charles M. A. Martin,* Assistants Attorney General, for defendant.

Carr, J.   Plaintiff herein is a Michigan corporation organized in 1949 and having among its corporate purposes the purchasing, selling and leasing of real estate for the corporation's use, and the exhibiting and racing of horses.   It owns a track located in the city of Hazel Park, Oakland county, on which it conducted racing meets during the years 1949 to 1952 inclusive.   It holds a track license from the State, issued to it in accordance with pertinent statutory provisions.   Under date of December 23, 1952, it made application to the defendant, the racing commissioner of the State, for a license to conduct racing meets at the track during the 1953 season, specifically covering dates commencing August 6th to and including October 10th.   The record discloses that defendant did not make any formal written order denying the application but indicated that it would not be acceptable unless and until there was compliance with certain conditions hereinafter mentioned.

The defendant racing commissioner is subject, in the administration of his duties, to the provisions of PA 1933, No 199 (CL 1948, § 431.1 *et seq.* [Stat Ann and Stat Ann 1951 Cum Supp § 18.941 *et seq.*]). Attention is also directed to PA 1952, No 197 (CL 1948, § 24.101 *et seq.* [Stat Ann 1952 Rev § 3.560(21.1) *et seq.*]), regulating procedure by and before State administrative agencies.   CL 1948, § 431.9 (Stat Ann 1951 Cum Supp § 18.949), provides in part as follows:

"Any person or persons desiring to conduct a racing meet within the State of Michigan, shall apply to the commissioner for a license to do so.  Such application shall be filed with the secretary of the commission at least 10 days prior to the first day of each horse-racing meeting, which such person or persons propose to hold or conduct.  Such application shall specify the day or days on which such racing is desired to be conducted or held, and such application shall be in such form and supply such data and information as the commissioner shall prescribe.  The commissioner shall have the power to reject any application for a racing meet license for any cause which he may deem sufficient, which rejection may be appealed to the circuit and Supreme Court."

Plaintiff seeks to compel defendant, by writ of mandamus, to issue the license for which it has applied.  It alleges in its petition that it has outstanding 1,374,970 shares of common capital stock, the ownership of which is divided among 490 persons residing in various parts of this country and in Canada.  It does not appear that its financial operations are in question, or that any criticism has been made with reference thereto.  Following the submission of the application for the license conferences or discussions were had between defendant and representatives of the plaintiff, and also an interchange of correspondence.  In answer to the application defendant stated, in a letter to plaintiff bearing date February 20, 1953, that the days sought to be covered by the license had been tentatively allocated but subject to confirmation "only after all requirements contained in the attached report have been fulfilled in addition to such other requirements as may be laid down in the course of our continuing negotiations."  Accompanying the letter was a copy of a report made by defendant to the Governor of the State, in which the following statement appears:

"The Hazel Park application was denied by me on February 9, 1953, on the ground that several sizeable blocks of stock in the association were held by persons who through family relationships or adverse police records were unacceptable to the racing commission as part owners of a licensed racing association."

As before noted, defendant did not make a formal written order but the record fully justifies the conclusion that he repeatedly indicated to plaintiff that its application would not be given favorable consideration unless certain designated shareholders, referred to in general terms in the excerpt above quoted from the report to the Governor, divested themselves of ownership of their stock, and that pending sale thereof such shareholders should relinquish their voting rights to a voting trust. The amount of stock held by such shareholders is, it is claimed, not in excess of 200,000 shares. There is no showing as to how many of the persons that defendant insisted should dispose of their interests in the plaintiff corporation actually had adverse police records, nor as to the number that were unacceptable to defendant because of family relationships. Neither is it claimed on behalf of defendant that any of such stockholders are now participating in any way in criminal activities.

Obviously the statute defining the powers and duties of the defendant with reference to the issuance of licenses may not be construed as vesting in him arbitrary authority to reject an application. The fact that an order made by him is specifically declared subject to judicial review is conclusive in this respect. An attempt to vest absolute and final authority might well be challenged on constitutional grounds. It is defendant's position, as appears from his answer and the return to the order to show cause issued by this Court, that he is vested with discretion

and that the exercise thereof should not be subject to judicial interference or control, unless it appears that the act, or refusal to act, that is in question was not a proper exercise of powers granted by the statute and was in consequence unwarranted.

Emphasis is placed on the duty of the defendant to perform the functions of his office for the benefit of the public, and it is argued in his behalf that he may properly refuse to grant a license of the character involved in the instant case if the public interest would thereby be harmed or jeopardized. However, no attempt has been made here to point out how any such result may follow from the granting of the license sought by plaintiff without compliance with the imposed conditions. As before noted, plaintiff conducted racing meets for the past 4 years under licenses granted to it. It is not claimed that the public was harmed as a result of such operations. Neither is it claimed that the stockholders, or any of them, referred to in the conditions of acceptance of the application for the 1953 season, as imposed by defendant, are active in the management of the corporation or that they, or any of them, are directing its policies and activities. The right of defendant to decline to grant a license where reasonable and proper grounds appear therefor is not an issue in this case. Rather the situation is that defendant by refusing to grant the license, unless the conditions imposed by him are performed, seeks to require plaintiff to bring about a situation that it has no power to compel. It is claimed, and not disputed, that plaintiff has sought to persuade the stockholders in question, or at least some of them, to dispose of their stock, and that such efforts have met with refusals. Plaintiff corporation, which is not itself accused of improper conduct of any kind inimical to the welfare of the people of this State, cannot compel the minority stockholders in question to dispose of their property.

Under these circumstances it must be said that the statute under which defendant is functioning does not authorize him to demand compliance with the conditions imposed on plaintiff as a necessary' prerequisite to the granting of a license.

Cases involving analogous questions to that presented here have arisen in other States. In *People, ex rel. Empire City Trotting Club,* v. *State Racing Commission,* 190 NY 31 (82 NE 723), the defendant refused to issue a license to conduct races on the ground that the season had been divided among 6 other tracks. It was the claim of the defendant that to grant the license would cause an interference with racing upon such other tracks. It was held that the object of the statute was to insure the proper conduct of racing but that the refusal of the commission to grant the license to the moving party was not justified. In commenting on the situation presented, it was said in part:

"There are to be found in the affidavits in answer to the application for the writ denials by the appellants that the relator has complied with the requirements of the statute, and that he is entitled to a license. But these denials in gross are merely of conclusions, and too indefinite to raise an issue to defeat a peremptory writ where the facts should have been explicitly alleged. * * * The only specific reasons given by the respondents for refusing to issue the license to the relator are that the racing season allowed by law, to wit, from April 15th to November 15th, in each year, has been divided up among 6 other tracks in the vicinity of the city of New York and the Saratoga Racing Association, that the allotment of dates is a proper regulation of racing, and that to grant the relator any dates would interfere with the racing upon the other tracks. None of these considerations, in our opinion, had the commission the right to entertain, nor should they have had any influence on its action."

Of like import is *State, ex rel. Kinsella,* v. *Florida State Racing Commission,* 155 Fla 387 (20 So2d 258). There the relator, acting as agent of the Daytona Jockey Club, made application for a racing permit in accordance with the provisions of the Florida statute. The information submitted complied with the statutory requirements. The application was denied and an action of mandamus was instituted to compel the granting of the permit. Defendant, by motion to quash and by answer to the petition, raised the claim that it was vested with a discretion which could not be controlled by mandamus, that there was no showing that such discretion had been abused, and that the denial of the permit was in behalf of the general welfare. Further averments in the answer apparently were designed to raise the question that the contemplated project of relator's principal would, or might, be financially unsound. It was the holding of the court that relator had complied with the statute in making application for the permit, and his principal was entitled thereto, and that mandamus was a proper remedy. In reaching such conclusion, it was said:

"We hold that the several allegations of the answer or return of the respondents to the alternative writ fail to state or constitute a legal defense and therefore the peremptory writ of mandamus is hereby awarded as prayed for."

In the recent case of *Jones* v. *Kind,* 61 So2d 188, decided by the supreme court of Florida on October 24, 1952, it was held that the State racing commission had no authority to cite the plaintiff before it to show cause why he should not be required to sever his financial interest in Florida race tracks. Following such citation plaintiff Kind filed a bill for a declaratory decree and for an injunction against the racing commission and others and obtained the

relief sought. In sustaining the decree of the trial court, it was said:

"There is no yardstick or limitation as to what would make, in the opinion of the members of the commission, the stockholder 'undesirable' and would cause him to be 'regarded by all members of the commission' as being undesirable and hurtful in this State and because of 'public opposition' to the stockholder's connection with Florida racing.

"To many people who are opposed to pari-mutuel racing in Florida, all persons owning stock in a corporation conducting a race track may be 'undesirable' and such people may be a part of the 'public' which would constitute 'public opposition' to the particular stockholder's connection with Florida racing and to all other persons owning stock in Florida racing. The words 'undesirable' and 'public opposition' are very elastic terms. To the owners of stock of a competing race track all stockholders of another race track may be undesirable and the owners of the stock or the competing corporation may be a part of the public which would be in opposition to stockholders owning stock in another corporation conducting racing. Many people in the State (a part of the public) are opposed to race tracks, poolrooms, barrooms, cocktail lounges and many other things which may be distasteful to them, but which have been legalized and licensed to operate in this State.

"It appears to be the contention of the appellants that they have uncontrolled, unbridled and unlimited authority to determine who is undesirable as a holder of stock in a corporation conducting racing or that public opposition to the stockholder's connection with Florida racing is sufficient justification for the commission to order the stockholder to dispose of his stock. The law in question does not attempt to grant any such authority or power to the appellants and so far as the record shows they have not attempted to arrogate to themselves any such power."

Based on the provisions of the statute, above quoted in part, authorizing appeals to the circuit and Supreme Court from orders rejecting an application for a racing meet license, and also on the provisions of PA 1952, No 197, defendant argues that mandamus is not a proper remedy in the instant case. In effect the claim is made that plaintiff should await the making of a formal order rejecting its application for a license, and take an appeal therefrom. Defendant suggests in this connection that he is willing to hold a formal hearing, if plaintiff seeks such, and to make a written order disposing of the matter. In the light of what appears in the record before us, it may be assumed that such order would be in the form of a denial of the license sought. On the facts here, defendant's argument is not well founded. He has taken the position, expressing it in unequivocal terms, that the license sought by plaintiff would be denied in the absence of compliance with the conditions imposed. As hereinbefore pointed out, such conditions were unwarranted, and compliance therewith could not properly be required by defendant as a condition prerequisite to the granting of plaintiff's application. It further appears that if plaintiff is to operate during the period of time tentatively set for its racing meet it will be required to make preparations therefor, and to enter into contracts incident to the contemplated operation. Under the circumstances plaintiff is entitled to invoke the remedy of mandamus on the ground that any other remedy that is or may be available to it is inadequate to fully and properly protect its rights.

The further claim is advanced that this action is premature. Defendant says that negotiations between the parties are still in progress. It is apparent that the negotiations that have been conducted since the making of the application by plaintiff have had reference to compliance with the conditions imposed

by defendant on the granting of the application. Unquestionably further negotiations, if held, would relate to the same subject, in other words to the matter of compliance with requirements beyond the power of defendant to impose. Without legal justification defendant has put himself in the position of declining, without a formal order, to issue a license to which the plaintiff is entitled. Plaintiff's right to the relief sought is not open to the objection that this proceeding was prematurely brought.

In *Chemical Bank & Trust Co.* v. *County of Oakland,* 264 Mich 673, 678, 679, this Court, in discussing the right to the remedy of mandamus, quoted from *People, ex rel. Township of LaGrange,* v. *State Treasurer,* 24 Mich 468, 477, as follows:

" 'In cases where the right is clear and specific, and public officers or tribunals refuse to comply with their duty, a writ of mandamus issues for the very purpose, as declared by Lord Mansfield, of enforcing specific relief. It is the inadequacy, and not the mere absence, of all other legal remedies, and the danger of a failure of justice without it, that must usually determine the propriety of this writ. Where none but specific relief will do justice, specific relief should be granted if practicable. And where a right is single and specific it usually is practicable.' "

See, also, *National Bank of Detroit* v. *State Land Office Board,* 300 Mich 240; *Howard Pore, Inc.,* v. *State Commissioner of Revenue,* 322 Mich 49, 75, 76 (4 ALR2d 1041).

The writ of mandamus will issue as prayed. In view of the nature of the questions involved, no costs are allowed.

DETHMERS, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred with CARR, J.

ADAMS, J., concurred in the result.