SOUTH HAVEN RACING ASSOCIATION, INC v MICHIGAN
RACING COMMISSIONER

1. THEATERS AND SHOWS—HORSE RACING—LICENSES—TRACK AND
RACE MEET—RACING COMMISSIONER.

   The racing commissioner does not have arbitrary authority to
   reject an application for a track and race meet license, but
   must base any such rejection on good and reasonable cause
   (MCLA 431.31 *et seq.*).

2. THEATERS AND SHOWS—HORSE RACING—LICENSES—RACING COMMIS-
SIONER—NECESSARY AND PROPER—POWER.

   The racing commissioner has a right to deny an application for a
   track and race meet license pending his study of the statewide
   horse racing program for the current year, under the "neces-
   sary and proper" power granted to him in the statute and
   under the regulations which the commissioner has prescribed
   (MCLA 431.32).

3. THEATERS AND SHOWS—HORSE RACING—LICENSES—INTERLOCUTORY
ORDER.

   A letter from the racing commissioner denying an application for
   a track and race meet license pending a study of the results of
   the current season was an interlocutory order, and the commis-
   sioner must make a final ruling on the application after he has
   had time to review the results of the season.

Appeal from Van Buren, David Anderson, Jr., J.
Submitted Division 3 April 7, 1972, at Grand
Rapids. (Docket No. 12160.) Decided July 25, 1972.

South Haven Racing Association applied to the
Michigan Racing Commission for a track and race
meet license. License denied. Plaintiff appealed to
circuit court. Reversed. Defendant appeals. Re-
versed.

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 4 Am Jur 2d, Amusements and Exhibitions § 29 *et seq.*

· *Ray E. Barrett,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Franklin J. Rauner,* Assistant Attorney General, and *Thomas R. Wheeker,* Assistant Attorney General, for defendant.

Before: T. M. BURNS, P. J., and R. B. BURNS and HOLBROOK, JJ.

T. M. BURNS, P. J. On February 5, 1971, the plaintiff filed with the Michigan Racing Commission a written Application for License to Construct Horse Race Track with Pari-Mutuel Wagering Running Races and Harness Races. The required fee for such license was paid to the Michigan Racing Commission on February 12, 1971. Such fee was duly returned to the plaintiff's attorney by the defendant. Both the South Haven Township Board and Van Buren Board of Commissioners signified approval of the application. The sheriff and prosecuting attorney of Van Buren County indicated that they had no objections to the plaintiff's application for the license. In a letter dated March 5, 1971, the defendant denied the plaintiff's application. He stated:

"I have carefully studied and reviewed the expansion of pari-mutuel horse racing in areas of Michigan where it does not exist at the present time. This study and review included the area in which you have applied for a pari-mutuel horse race track license.

"I believe at this time it would not be in the best interest of horse racing in Michigan to expand existing facilities and programs. I say this primarily because of the action taken recently in expanding the racing program at existing tracks. As you know I approved for 1971, 138 additional racing dates. In my judgment expansion of this sport must be predicated upon sound

evaluation of on-going activities. Until such time as we are able to review and evaluate the effect of our expanded program, it would be unwise to authorize additional facilities.

"On the basis of the above, I find it necessary to deny you a track and race meet license. This action should not be interpreted as a reflection on the integrity and reputation of the men involved in your association. It is regrettable that this action must be taken, but I am sure that you were aware of this possibility when the application was submitted."

From this denial, the plaintiff sought review by the trial court in the nature of certiorari. The trial court, in reversing the determination of the defendant commissioner and setting aside and vacating his denial of the plaintiff's license, found in part:

"The only reason for denial of a license to plaintiff is the expanded racing program authorized by the commissioner at existing tracks. The commissioner's denial is not based on any deficiency in the applicant or track. Having asserted the above reason for denial of the application defendant is now estopped from claiming any other reason.

" * * * Nor does defendant assert any other ground for denial in his pleadings.

"The commissioner asserts that he has the right to suspend the operation of the licensing statute and to refuse to issue any new license, no matter how meritorious the applicant track may be, until he has had time to study and evaluate the 1971 racing season at now existing tracks. Since the 1971 season ends on December 18, 1971, this would mean that no application could hope for acceptance until 1972. Defendant asserts that this is a reasonable exercise of defendant's powers and duties.

"Defendant, in effect, exercises his discretion by refusing to exercise his discretion. He refuses to make the statutorily required investigation of the applicant or proposed track. He cites no requirement for the appli-

cant to comply with as a basis for a license. Such refusal can be described by no other words than arbitrary. Arbitrary or unreasonable actions, or refusals to act, are invalid.

\* \* \*

"Here, for the purposes of this case at least, the application complied with the statute. It was denied because of a belief on the part of the commissioner that the granting of a license 'would not be in the best interest of horse racing in Michigan.'

"An applicant for a license has a right to know the specific reason for refusal of a license and a right to know what he must do to qualify for the issuance of a license. Denial of this application on the nebulous ground of the best interests of horse racing in Michigan is unreasonable and arbitrary.

"A judgment may enter determining that the act of defendant in denying the application for a license, without the statutory investigation of the applicant and proposed track, and without specifying the areas in which the application was deficient, solely upon a claim that allowance of the application would not benefit horse racing, was arbitrary, unreasonable and invalid, and reversing the determination of the commissioner and setting aside and vacating his denial of a license."

The relevant statutory act is the Racing Law of 1959, MCLA 431.31 *et seq;* MSA 18.966(1) *et seq.* Section 8 of that act, MCLA 431.38; MSA 18.966(8) provides:

"Sec. 8. (1) The commissioner shall issue, without further application, a track license to any person maintaining or operating a licensed horse race track as of January 1, 1959, with wagering by pari-mutuel methods on the results of the racing.

"(2) The commissioner may issue a track license to any person desiring to maintain or operate a track where it is proposed to conduct horse racing with wagering by pari-mutuel methods on the result of the racing, whether or not the track is then constructed.

"(3) The track license, once issued, shall continue so long as the annual license fee is paid, or until it is voluntarily surrendered, or terminated as provided in this act.

"(4) The track license application shall be in writing, shall show satisfactory financial responsibility, shall show the location of the track or of the proposed track and shall be accompanied by substantially detailed plans and specifications of the track, buildings, fences and other improvements. The application shall give the name and address of the applicant, and if a corporation shall state the place of its incorporation, and shall give any other information required by the regulations or by the commissioner. Upon the filing of the application and payment of the license fee, the commissioner shall make such investigation of the applicant and of the track or proposed track as he deems best, and if satisfied the person and the track meet all regulations, he shall grant a license for the track, designating therein the county or area of the licensee. The commissioner, if the track does not comply with the regulations, shall refuse the license but shall grant a license upon compliance with requirements imposed by him. After any license is issued, it may be revoked if the licensee after reasonable notice from the commissioner does not make such improvements or additions to the track as are necessary, or if the licensee wilfully violates the provisions of this act. The action of the commissioner in refusing or revoking a track license may be reviewed by the circuit court of the county in which the track is located. Either party may appeal from the circuit court to the supreme court. The applicant for the license shall also pay the license fees provided in this act. In a city area, there may be licensed not more than 3 tracks. A city area includes any city having a population of 1,000,000 or more, according to the latest or each succeeding federal decenial census, and includes the counties wholly or partly within a distance of 30 miles of the city limits of such city."

"(5) No person, partnership, association, or corporation may be issued more than 1 track license, and controlling ownership and interlocking directorates among track licensees is prohibited."

The above statute may not be construed as vesting in the racing commissioner arbitrary authority to reject an application. *Hazel Park Racing Ass'n Inc v Racing Comm'r,* 336 Mich 508 (1953). The commissioner can reject an application only for good and reasonable cause. *Leach v Racing Comm'r,* 340 Mich 202 (1954). The question remains, however, whether the racing commissioner can deny a license for a race track until such time that he is able to review and evaluate the effect of a presently expanded racing program. MCLA 431.32; MSA 18.966(2) provides:

"There is hereby created the office of racing commissioner, who is vested with the powers and duties prescribed in this act and *also such powers necessary and proper to enable him to carry out fully and effectually all the purposes of this act."* (Emphasis supplied.)

MCLA 431.36; MSA 18.966(6) provides in part:

"The commissioner shall prescribe rules, regulations and conditions * * * under which all horse racing shall be conducted within the state."

One such regulation is 1964–1965 AACS, R431.67 (Rule 339) which states:

"In granting a license to any new or any existing racing association to conduct race meetings, the commissioner will consider especially the following matters:

"a. *Opportunity for the sport to properly develop.*

"b. Avoidance of competition with established tracks.

"c. Extent of community support for the promotion and continuance of the tracks.

"d. The character and reputation of the men identified with the undertaking." (Emphasis supplied.)

It would appear that defendant racing commissioner based his decision on sub-rule 339(a), the

opportunity for the sport to properly develop. The defendant deemed it in order to observe and study the effect of his allocation of additional racing dates for the year 1971 from the view of the public welfare and the industry generally, before investigation, or an extended consideration of applications for licenses for new tracks and race meeting licenses in the State of Michigan. In that respect, we find that the letter to the plaintiff setting forth the commissioner's reasons for denying the license was only an interlocutory order pending his study of the horse racing program in Michigan for 1971. This, in our opinion, he had a right to do under the "necessary and proper" power granted to him in the statute and under the regulations which the commissioner has prescribed. We therefore hold that the judgment of the trial court is reversed.

Since we have held that the letter to the plaintiff denying their license was only an interlocutory ruling on the matter, defendant must still make a final disposition on plaintiff's petition. Since the 1971 racing season is complete and the commissioner has had ample time to review the results thereof, we hereby order the defendant to make his evaluation and issue a final ruling in this matter within 30 days of the date of release of this opinion.

All concurred.