SAGINAW VALLEY TROTTING ASSOCIATION, INC. v MICHIGAN
RACING COMMISSIONER

Docket No. 77-4086. Submitted May 10, 1978, at Lansing.—Decided
July 6, 1978.

The Saginaw Valley Trotting Association, Inc. and the Saginaw
County Agricultural Society entered into a 10-year renewable
lease to conduct harness racing and on August 23, 1977, the
trotting association applied to the racing commissioner for a
track license. On October 13, 1977, the commissioner denied
the application for a track license. The association and the
society then filed a complaint, in the Court of Appeals, for
mandamus and in addition moved that the racing commissioner
be ordered to show cause why mandamus should not be entered
against him. On November 18, 1977, the Court of Appeals
granted the order to show cause and further ordered that the
parties submit briefs on the issue of whether a complaint for
mandamus in the Court of Appeals is an appropriate remedy in
view of the fact that MCL 431.38; MSA 18.966[8] provides for a
circuit court appeal from a refusal to grant a track license and
that MCL 600.4401; MSA 27A.4401 now provides for mandamus
against a state officer in circuit court, in addition to briefing
the merits. *Held:*

1. The denial of a racing license by the racing commissioner
should be reviewed by appeal coupled with mandamus in
circuit court because circuit courts now have mandamus juris-
diction over state officers under the changes in the Revised
Judicature Act, effective January 1, 1977. However, since the
issue of the appropriateness of mandamus in the Court of
Appeals was raised by the Court of Appeals and since the issue

REFERENCES FOR POINTS IN HEADNOTES
[1] 52 Am Jur 2d, Mandamus §§ 7, 46 *et seq.*
[2–4, 6] 4 Am Jur 2d, Amusements and Exhibitions § 30.
  51 Am Jur 2d, Licenses and Permits §§ 81, 149.
  52 Am Jur 2d, Mandamus §§ 26, 44.
[3] 52 Am Jur 2d, Mandamus § 207.
[5] 4 Am Jur 2d, Amusements and Exhibitions § 30.
  51 Am Jur 2d, Licenses and Permits §§ 45–47.

presented is one of first impression and plaintiffs did follow the standard procedure for mandamus as it existed up to this time, plaintiffs will not be denied access to the remedy they invoked on the ground that they brought their action in the wrong court. The decision in this case is limited to complaints for mandamus filed in the Court of Appeals after the date of this opinion and the opinion is limited to complaints for mandamus brought under the racing act.

2. It was appropriate for the commissioner to take into consideration reasons appearing outside the application itself. Also, the availability of sufficient racing stock was a proper consideration; however, before full consideration can be given to this matter by the Court of Appeals, it is necessary for the commissioner to update and detail findings with supporting reasons on the question of the availability of stock.

Remanded to the racing commissioner, with the Court of Appeals retaining jurisdiction.

1. Mᴀɴᴅᴀᴍᴜs—Oᴛʜᴇʀ Aᴅᴇǫᴜᴀᴛᴇ Rᴇᴍᴇᴅʏ.

Mandamus will not issue if another adequate remedy is available.

2. Mᴀɴᴅᴀᴍᴜs—Cɪʀᴄᴜɪᴛ Cᴏᴜʀᴛs—Sᴛᴀᴛᴇ Oғғɪᴄᴇʀs—Sᴛᴀᴛᴜᴛᴇs—Cᴏᴜʀᴛ ᴏғ Aᴘᴘᴇᴀʟs—Dᴇɴɪᴀʟ ᴏғ Rᴀᴄɪɴɢ Lɪᴄᴇɴsᴇ.

Circuit courts now have mandamus jurisdiction over state officers; therefore, a party feeling aggrieved by the denial of a racing license by a state officer now has an adequate remedy in circuit court, and the Court of Appeals may decline to issue mandamus even though that Court has concurrent mandamus jurisdiction with circuit courts and even though a plaintiff has a choice of forum (MCL 431.38[4], 600.4401; MSA 18.966[8][4], 27A.4401).

3. Mᴀɴᴅᴀᴍᴜs—Lɪᴄᴇɴsᴇs—Dᴇɴɪᴀʟ ᴏғ Lɪᴄᴇɴsᴇ Aᴘᴘʟɪᴄᴀᴛɪᴏɴ—Rᴀᴄɪɴɢ Cᴏᴍᴍɪssɪᴏɴᴇʀ—Cᴏᴜʀᴛ ᴏғ Aᴘᴘᴇᴀʟs—Cɪʀᴄᴜɪᴛ Cᴏᴜʀᴛ—Sᴛᴀᴛᴜᴛᴇs.

Review of a denial of a license by the racing commissioner should be by appeal, coupled with mandamus, in the circuit court; however, where the issue of the appropriateness of bringing the mandamus action in the Court of Appeals subsequent to an amendment of the Revised Judicature Act which gave circuit courts concurrent mandamus jurisdiction with the Court of Appeals is one of first impression and was raised by the Court of Appeals after plaintiffs had brought the mandamus action in the Court of Appeals, the plaintiffs should not be denied access to the remedy they invoked on grounds that they brought their action in the wrong court (MCL 600.4401; MSA 27A.4401).

4. LICENSES—HORSE TRACK LICENSES—DENIAL OF LICENSES—STAN-
DARD OF REVIEW.

   The standard of review, when reviewing the denial of an applica-
   tion for a horse track license, is whether the racing commis-
   sioner's denial was for good and reasonable cause or whether
   the rejection was arbitrary, capricious and unreasonable.

5. LICENSES—HORSE TRACK LICENSES—RACING COMMISSIONER—EX-
TRINSIĊ CONSIDERATIONS.

   The racing commissioner, in considering an application for a
   track license, is permitted to give consideration to extrinsic
   circumstances such as the availability of racing stock and the
   opportunity for the sport to develop as part of the race track
   decisional process.

6. LICENSES—INITIAL ISSUANCE—DUE PROCESS—HEARING—ADMINIS-
TRATIVE LAW—JUDICIAL REVIEW.

   Due process ordinarily does not require an opportunity for a
   hearing where the question is whether a license should issue
   initially; however, in a mandamus action against the racing
   commissioner, despite the fact that the court cannot remand
   for an evidentiary hearing because no hearing is statutorily
   required, it is inherent in the process of judicial review that the
   commissioner's reasons and conclusions be set forth in a suffi-
   ciently full and understandable manner to make review possi-
   ble and, therefore, remand for more detailed findings should be
   made.

*Borrello, Geyer, & Scorsone,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *George M. El-
worth,* Assistant Attorney General, for defendant.

Before: BEASLEY, P. J., and ALLEN and H. E.
DEMING,* JJ.

ALLEN, J. Plaintiffs ask this Court to issue an
order of mandamus requiring racing commis-
sioner, Fedele F. Fauri, to issue a license to oper-
ate a harness race track at the Saginaw County
Fairgrounds.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff Saginaw County Agricultural Society is a quasi-public body owning the Saginaw County Fairgrounds. Plaintiff Saginaw Valley Trotting Association, Inc., is a nonprofit corporation incorporated in 1977, for the purpose, *inter alia,* of conducting harness racing with parimutuel betting. On August 11, 1977, plaintiffs entered into a 10-year renewable lease to conduct harness racing and, on August 23, 1977, the trotting association applied to the racing commissioner for a track license pursuant to § 8 of the Racing Law, and for race meeting dates from May 22 through July 29, 1978, pursuant to § 9 of the Racing Law.[1] On September 15, 1977, the commissioner requested additional information and documentation which was promptly submitted by the trotting association. In a ruling dated October 13, 1977, the commissioner denied the application for a track license. The principal reason for denial was that, even if a track license were granted, racing dates could not be given because competition from existing tracks and the unavailability of racing stock made the grant of new racing dates inconsistent with the commissioner's duty under regulations to provide opportunity for the sport to properly develop. 1964–1965 AACS R 431.67 (Rule 339).[2]

[1] The Racing Law was amended by 1977 PA 63. Sections 8 and 9 are found at MCL 431.38, 431.39; MSA 18.966(8), 18.966(9).

[2] The commissioner ruled in part:

"Saginaw Valley's eligibility for a track license is necessarily conditioned upon its eligibility for racing dates once such a track license is issued. It would be an exercise in futility for this office to grant a track license to an organization which would not qualify for racing dates.

* * *

"The granting of the Genesee Raceway and Saginaw Valley track license applications at this time would raise serious questions as to the ability of one or all of the tracks in that area to conduct successful race meetings because of uncertainties as to the availability of sufficient racing stock, adequate patronage and community

Plaintiffs then filed this complaint for mandamus and, in addition, moved that the defendant be ordered to show cause why mandamus should not be entered against him. By order dated November 18, 1977, this Court granted the order to show cause and further ordered that the parties submit briefs on issue I, *infra,* in addition to the merits.

I. *Is a complaint for mandamus in the Court of Appeals an appropriate remedy in view of the fact that MCL 431.38; MSA 18.966(8) provides for a circuit court appeal from a refusal to grant a track license and that MCL 600.4401; MSA 27A.4401 now provides for mandamus against a state officer in circuit court?*

In his brief submitted in response to this Court's directive to brief the above question, the Attorney General argues that the amendment to the Revised Judicature Act governing mandamus, MCL 600.4401; MSA 27A.4401,[3] now gives a party feeling aggrieved by denial of a license an adequate remedy in the circuit court and, this being so, mandamus in the instant case must be had in the circuit court. In response, plaintiffs argue that the very same amendment contains language explicitly providing that the choice of bringing manda-

support, and the potentially adverse impact on non pari-mutuel horse racing at local and county fairs. The cumulative impact of these uncertainties is such that it mandates a cautious approach to track development by this office."

[3] Prior to amendment, § 4401 stated:

"All actions for mandamus against state officers shall be commenced in the court of appeals or in the supreme court, as provided by rules of the supreme court."

After amendment by 1976 PA 317, § 4401 reads:

"1) An action for mandamus against a state officer shall be commenced in the court of appeals, or in the circuit court in the county in which venue is proper or in Ingham county, at the option of the party commencing the action."

mus in the Court of Appeals or the circuit court is "at the option of the party commencing the action".

In deciding which of the two points of view on this question of first impression should prevail, it is helpful to distinguish between (1) the right to seek mandamus in either the court of appeals or circuit court and (2) the discretionary right of the court in which mandamus is sought, to issue mandamus. It has always been the law that mandamus will not issue if another adequate remedy is available. *Constantine v Liquor Control Comm,* 374 Mich 259; 132 NW2d 146 (1965), *Hazel Park Racing Ass'n, Inc v Racing Comm'r,* 336 Mich 508, 518; 58 NW2d 241 (1953). Prior to the amendment, *supra,* it was the circuit court's inability to order issuance of the denied license which made relief in the circuit court inadequate. *Schweitzer v Board of Forensic Polygraph Examiners,* 77 Mich App 749, 753; 259 NW2d 362 (1977). Review in the circuit court was in the nature of *certiorari,* and *certiorari* permitted only affirmation, reversal or quashing of the proceedings reviewed. The court was without power to make an affirmative order. *Constantine v Liquor Control Comm, supra, Kelly Downs, Inc v Racing Comm,* 60 Mich App 539, 549; 231 NW2d 443 (1975). Where a state officer was defendant, as is the case here, the circuit court was also restricted by the rule forbidding a circuit court to issue mandamus against a state officer under any guise. *Minarik v State Highway Comm'r,* 336 Mich 209, 213; 57 NW2d 501 (1953), *Lord v Genesee Circuit Judge,* 51 Mich App 10, 16; 214 NW2d 321 (1973). But this bar was removed, effective January 1, 1977, by the amendment to § 4401 and, today, circuit courts have mandamus jurisdiction over state officers.

In our opinion, a party feeling aggrieved by denial of a racing license now has an adequate remedy in circuit court. Section 4401 as amended allows the circuit court to issue mandamus against state officers. Section 8(4) of the racing act explicitly provides that the racing commissioner's decision in refusing or revoking a track license may be reviewed by the circuit court of the county in which the track is located. MCL 431.38(4); MSA 18.966(8)(4). Section 4401 and § 8(4) combined, clearly give the party denied a racing license an adequate remedy. The remedy exists because, upon denial of the license, the party may appeal under § 8(4) to circuit court which, upon review in the nature of *certiorari* now under § 4401 may issue mandamus.[4] We therefore conclude that in the case before us the Court of Appeals may decline to issue mandamus even though the Court has concurrent mandamus jurisdiction with circuit courts and even though plaintiff has a choice of forum under RJA § 4401.

Our conclusion admittedly changes the heretofore existing rules governing review of a denial of a racing license. But we believe it is supported on both sound legal and policy grounds. As we noted earlier, it has always been the law that this Court would deny mandamus where an adequate remedy existed elsewhere. The Legislature amended the statute to give circuit courts mandamus jurisdiction over state officers but did not amend the existing rule allowing a court to decline to issue the writ where another adequate remedy is available. On policy grounds, our conclusion is supported

[4] We reject the argument that if appeal is taken to the circuit court under § 8(4) the scope of review is still limited by *certiorari,* since *certiorari* itself does not allow mandamus. The alleged deficiency may easily be overcome if appellant supplements his appeal with a motion for mandamus relief.

by the Supreme Court in *People v Flint Municipal Judge,* 383 Mich 429, 432; 175 NW2d 750 (1970), where the Court said:

"Reasons of policy dictate that such complaints [for superintending control] be directed to the first tribunal within the structure of Michigan's one court of justice having competence to hear and act upon them."

Our decision is also in conformity with the policy announced by the high Court in *Superx Drugs Corp v State Board of Pharmacy (On Rehearing),* 375 Mich 314, 320; 134 NW2d 678 (1975):

"The policy of this Court is to adhere in all but extremely rare instances to the method of review of the decisions of administrative agencies which is provided by specific statutes."

Finally, our holding is consistent with the policy expressed in GCR 1963, 801.2:

"Where any administrative action is subject to review concurrently by direct appeal to the Supreme Court or the Court of Appeals (or by any writ or remedy for which appeal is a substitute) and by suit, action or proceedings authorized by law in the circuit court for the same or similar ultimate relief, the circuit court shall have the duty to proceed in any such suit, action or proceeding brought in said court as if the same were the sole method of review, unless otherwise ordered by the Court of Appeals or the Supreme Court."

Though we conclude that review of a denial of a license by the racing commissioner should be by appeal, coupled with mandamus, in the circuit court, we acknowledge that application of the rule to plaintiffs in the present case would be unfair. The issue presented is of first impression and was

raised by this Court. Plaintiffs did follow the standard procedure for mandamus as it existed up to this time. Therefore, we limit our decision in this case to complaints for mandamus filed in this Court after the date of this opinion, and will not deny plaintiffs access to the remedy they invoked on grounds that they brought their action in the wrong court. Furthermore, we limit our opinion to complaints for mandamus brought under the racing act. We do not hold that all mandamus actions against state officers must start in circuit court but we leave this issue for future decision on a case by case basis.[5]

II. *Was the racing commissioner's denial of the application for a race track license arbitrary, capricious and unreasonable?*

In reviewing the denial of an application for a horse track license, the standard of review is whether the commissioner's denial was for good and reasonable cause or whether the rejection was arbitrary, capricious and unreasonable. *Mount Clemens Harness Ass'n v Racing Comm'r,* 360 Mich 467, 474; 104 NW2d 363 (1960), *Kelly Downs, Inc v Racing Comm'r, supra,* 550. The claim that the commissioner's denial in the case before us was arbitrary, capricious and unreasonable is posited on two grounds: *First,* that denial of a track li-

---

[5] However, it would seem that the rationale of this decision would apply to most mandamus proceedings for review of state officers' agency decisions where a remedy for review or appeal in circuit court is available under either the specific statute under which the agency proceedings were conducted, Chapter 6 of the Administrative Procedures Act, MCL 24.301 *et seq.;* MSA 3.560(201) *et seq.,* or § 631 of the Revised Judicature Act, MCL 600.631; MSA 27A.631. Where circuit court review or appeal is available under one of those sources and mandamus is sought in the Court of Appeals, this Court could properly decline to entertain the complaint on the grounds that the circuit court remedy, coupled with a complaint, motion or prayer for mandamus relief, is an available adequate remedy.

cense may not be based on reasons for denial of a racing date license; *Second,* that the commissioner grieviously erred in concluding there would be an insufficiency of racing stock. The first ground of error presents a question of law. The second involves a question of fact.

We do not read *Kelly Downs, supra,* as holding that in denying a track license the commissioner may not take into consideration reasons appearing outside of the application itself. While a brief section of the Court's written opinion in that case suggests such holding, we believe that the opinion, when read as a whole, holds that the commissioner's reason for denial of the application, *viz.:* that the administration was not prepared to extend pari-mutuel horse racing into new areas of the state—was too general and conclusionary only. In contrast, the denial in the instant case was predicated upon specific findings of fact which, although disputed as to their accuracy by plaintiffs, were spelled out in detail in the commissioner's formal ruling.[6]

Assuming, *arguendo,* that the holding in *Kelly Downs* does preclude the commissioner from taking into consideration the unavailability of race stock or the pending development of harness racing in the Flint-Saginaw region, we disagree with *Kelly Downs.* So narrow an interpretation of *Kelly Downs* is impractical, is contrary to § 2 of the racing act, MCL 431.32; MSA 18.966(2), and is inconsistent with decisions in other courts. It would be a futile gesture to force the commissioner to grant a track license knowing full well that subsequently a racing date license would be de-

---

[6] The commissioner's denial included both a brief letter and a 2-1/2 page formal ruling spelling out in detail the limitations on available stock and the proximity of track licenses in the Flint-Saginaw region. *See* fn 2.

nied. It would also be unfair to the petitioning party. Plaintiffs' argument is inconsistent with this Court's decision in *South Haven Racing Ass'n, Inc v Michigan Racing Comm'r*, 42 Mich App 125; 201 NW2d 314 (1972). In that case the commissioner had denied an application for a track license and racing date license on grounds that because of the recent expansion of racing dates and until such time as such expansion could be evaluated " 'it would not be in the best interest of horse racing in Michigan to expand existing facilities and programs' ", 42 Mich App at 126. On appeal to our Court, plaintiff argued, as does plaintiff here, that the denial was not based on any deficiency in the application for a track license but was wrongfully based on extrinsic considerations pertaining to the opportunity for the sport of horse racing to properly develop. The argument was rejected:

"It would appear that defendant racing commissioner based his decision on sub-rule 339(a), the opportunity for the sport to properly develop. The defendant deemed it in order to observe and study the effect of his allocation of additional racing dates for the year 1971 from the view of the public welfare and the industry generally, before investigation, or an extended consideration of applications for licenses for new tracks and race meeting licenses in the State of Michigan. In that respect, we find that the letter to the plaintiff setting forth the commissioner's reasons for denying the license was only an interlocutory order pending his study of the horse racing program in Michigan for 1971. This, in our opinion, he had a right to do under *the 'necessary and proper' power granted to him in the statute and under the regulations which the commissioner has prescribed."* 42 Mich App at 130–131. (Emphasis supplied.)

The "necessary and proper" power to which the Court referred is found in § 2 of the racing act,

MCL 431.32; MSA 18.966(2).[7] In our opinion, § 2 permits the commissioner to give consideration to such matters as the availability of racing stock and the opportunity for the sport to develop as part of the race track decisional process. Finally, we note that the commissioner's power to consider track location in relation to other existing tracks is supported by *North Hampton Racing & Breeding Ass'n, Inc v New Hampshire Racing Comm*, 94 NH 156, 163; 48 A2d 472 (1946). There, the court held that the racing commissioner properly denied a track license for the reason that the "granting of *another permit* to conduct horse racing with pari-mutuel wagering in the *southeastern* section of New Hampshire would not be for the best interests of the State". (Emphasis added.)

On the factual question of whether the commissioner acted arbitrarily in finding that there was a shortage of harness stock, plaintiffs appear to be on stronger grounds. We recognize that in reviewing a finding of fact made by the commissioner, an appellate court will not superimpose its judgment over the judgment of the commissioner but will confine itself to determining whether there was good and reasonable cause to sustain the commissioner's findings. *Mount Clemens Harness Ass'n v Racing Comm'r*, 360 Mich 467, 474; 104 NW2d 363 (1960). As stated before, the principal reason assigned by the commissioner for denying the track license was the insufficiency of racing stock. Events transpiring subsequent in date to the denial of the license suggest that perhaps the commissioner erred on this key fact. As plaintiff's brief of December 20, 1977, and accompanying chart

---

[7] "There is hereby created the office of racing commissioner, who is vested with the powers and duties prescribed in this act and *also such powers necessary or proper to enable him to carry out fully and effectively all the purposes of this act.*" (Emphasis supplied.)

points out, the present Jackson racing dates overlap the major circuit (Detroit) tracks completely. If there are enough horses to race in Detroit and Jackson at the same time, it seems to follow that there would be enough horses to race in Saginaw and Detroit when Jackson was not running. The problem for this panel is that in the absence of a record we cannot determine whether the commissioner exercised his discretion reasonably. We recognize that the racing commission is not an agency within the protection of the Administrative Procedures Act and, as such, no hearing is required. *Kelly Downs v Racing Comm, supra,* 546. Where the question is whether a license should issue initially, due process ordinarily does not require an opportunity for a hearing. 2 Am Jur 2d, Administrative Law, § 403, p 210; 51 Am Jur 2d, Licenses & Permits, § 16, p 22. This being so, we also recognize we may not remand for an evidentiary hearing. But we can require the racing commissioner to be more explicit in his findings and reasons concerning the unavailability of horses. This is particularly true in relation to new developments occurring since the original decision was made. No matter what a statute may require or not require by way of hearing, it is inherent in the process of judicial review that the agency's reasons and conclusions be set forth in sufficiently full and understandable manner to make review possible. *Viculin v Dep't of Civil Service,* 386 Mich 375, 405; 192 NW2d 449 (1971).

Accordingly, this cause is remanded to the racing commissioner for updated and more detailed findings with supporting reasons on the question of the availability of stock and the current situation in the Saginaw-Flint area. Such findings should respond to the charges of inaccuracy made by

plaintiff in this appeal. The commissioner's updated report and finding should be made within 30 days of the date of this opinion. Our action in this regard is compatible with the final ruling of this Court in *Kelly Downs, supra.* We retain jurisdiction, deferring our decision as to whether mandamus shall issue until we have reviewed the commissioner's report.

Remanded in accordance with this opinion. No costs, a public question being involved.