GRAVLIN v DEPARTMENT OF STATE POLICE

Docket No. 77-1970. Submitted June 5, 1978, at Lansing.—Decided
November 27, 1978. Leave to appeal applied for.

Beverly Gravlin commenced an original action in the Court of
Appeals against the Michigan Department of State Police, the
Director of the Department of State Police, Lt. Col. John
Brown, and Lt. Raymond L. Coger for mandamus to require the
Department of State Police to issue the plaintiff a private
detective license and for compensatory damages. The depart-
ment had refused to issue the license because the plaintiff
allegedly did not meet the qualifications set out in the Private
Detective License Act. The plaintiff maintains that her associ-
ate degree in applied science in law enforcement from North-
western Community College qualified her for the license since a
provision of the act qualifies an applicant who "is a graduate
with a degree in a field of police administration from an
accredited university or college". *Held:*

1. The original action in the Court of Appeals was the
appropriate procedure for the plaintiff in this case because
there are no factual disputes and only questions of law are
involved and the denial of the license is not a subject within
the Administrative Procedures Act.

2. The degree qualification in the act requires that the degree
be from a four-year college, not a two-year college.

Mandamus denied.

1. MANDAMUS—COURTS—COURT OF APPEALS—DENIAL OF LICENSE—
PRIVATE DETECTIVE LICENSE ACT—STATUTES.

An original action of mandamus in the Court of Appeals is the
proper procedure for review of a denial of a license under the
Private Detective License Act where (1) the facts are undis-
puted and only questions of law are involved, and (2) the denial
is not a subject within the Administrative Procedures Act

REFERENCES FOR POINTS IN HEADNOTES
[1] 52 Am Jur 2d, Mandamus §§ 207-209, 217, 219.
[2] 15A Am Jur 2d, Colleges and Universities § 1.
[3] 73 Am Jur 2d, Statutes § 145 *et seq.*

(MCL 24.201 *et seq.*, 338.821 *et seq.; MSA* 3.560[101] *et seq.*, 18.184[1] *et seq.*).

2. STATUTES—LICENSES—PRIVATE DETECTIVE LICENSE ACT—WORDS AND PHRASES—"COLLEGE"—STATUTORY CONSTRUCTION—STATUTES.

The term "college" in the Private Detective License Act where the act provides that, as an alternative to the required experience qualification, an applicant may be qualified for a license if "a graduate with a degree in a field of police administration from an accredited university or college", means a four-year college and not a two-year community college (MCL 338.826; MSA 18.184[6]).

3. STATUTES—STATUTORY CONSTRUCTION—HARMONIOUS AND CONSISTENT ENACTMENT.

Statutes should be construed so as to produce, if possible, a harmonious and consistent enactment.

*Dively & Walton,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gerald F. Young* and *Richard P. Gartner,* Assistants Attorney General, for defendants.

Amici Curiae: *Denison, Porter & Bartush,* for Oakland Community College.

*Maclean, Seaman, Laing & Guilford,* for Lansing Community College.

*Thrun, Maatsch & Nordberg,* for Michigan Community College Association.

Before: ALLEN, P.J., and CYNAR and D. R. FREEMAN,* JJ.

ALLEN, P.J. In this original mandamus action filed with this Court, plaintiff seeks an order requiring the Michigan Department of State Police

* Circuit judge, sitting on the Court of Appeals by assignment.

to issue her a private detective license. The narrow question raised is whether § 6 of the Private Detective License Act, MCL 338.821 *et seq.;* MSA 18.184(1) *et seq.,*[1] requires an applicant to satisfy the statutory educational requirement with a degree from a four-year college or from a two-year college. This issue of first impression comes to us on the following facts.

In June 1973, plaintiff, then age 40, graduated with an associate degree in applied science in law enforcement from Northwestern Community College in Traverse City. Intending to become a private detective, she then filed with the Department of State Police an application for license as required by the Private Detective License Act, MCL 338.821 *et seq.;* MSA 18.184(1) *et seq.* In January, 1974, the department responded by letter stating that, as interpreted by the department, the statute required an applicant to have a four-year college degree. The department then requested an advisory opinion from the Attorney General who, on March 3, 1976, responded with OAG, 1975–1976, No 4935, p 328, interpreting the statute as requiring a degree from a four-year college. Plaintiff promptly requested a formal hearing on her application, and hearing was held April 6, 1976, at the conclusion of which the application was denied.

In May, 1977, plaintiff filed this original mandamus action for an order requiring the issuance of a license and for compensatory damages of $25,000 for defendants' alleged arbitrary refusal to issue a license. Thereafter, this Court issued a show cause order, and directed the parties to brief, in addition to the main issue involved, the two issues noted

[1] Section 6 lists the qualifications for being licensed by the Secretary of State. The licensing duties of the Secretary of State were transferred to the State Police by § 156 of the Executive Organization Act, MCL 16.256; MSA 3.29(156).

below.[2] In April, 1978, this Court granted leave to the Michigan Community College Association to file an amicus brief.

## I. MANDAMUS JURISDICTION

Initially we direct our attention to the jurisdictional issues which this Court directed the parties to brief. The issues were raised and are discussed in a recent opinion of this Court in *Saginaw Valley Trotting Ass'n, Inc v Michigan Racing Comm'r*, 84 Mich App 564; 269 NW2d 676 (1978). In that case, plaintiffs brought an original mandamus action against the racing commissioner following his denial of a track license. As here, the parties were asked to brief the question of whether mandamus in the Court of Appeals was an appropriate remedy in view of the fact that MCL 600.4401; MSA 27A.4401 now provides for mandamus in circuit court. Our Court held that in future cases involving review of a denial by the racing commissioner, mandamus should start in the circuit court. But the decision was limited as evidenced by two quotations from that opinion.

"Plaintiffs did follow the standard procedure for mandamus as it existed up to this time. Therefore, we limit our decision in this case to complaints for mandamus filed in this Court after the date of this opinion, and will not deny plaintiffs access to the remedy they invoked on grounds that they brought their action in the wrong court. Furthermore, we limit our opinion to

---

[2] (1) Is the complaint for mandamus in the Court of Appeals an appropriate remedy for plaintiff in view of the fact that MCL 600.4401; MSA 27A.4401 now provides for an action for mandamus against a state officer in the circuit court?

(2) Does plaintiff have an adequate legal remedy by seeking declaratory relief under MCL 24.263; MSA 3.560(163), MCL 24.264; MSA 3.560(164) and GCR 1963, 521.5 or by seeking an appeal under MCL 600.631; MSA 27A.631?

complaints for mandamus brought under the racing act. We do not hold.that all mandamus actions against state officers must start in circuit court but we leave this issue for future decision on a case by case basis.[5]

"[5] However, it would seem that the rationale of this decision would apply to most mandamus proceedings for review of state officers' agency decisions where a remedy for review or appeal in circuit court is available under either the specific statute under which the agency proceedings were conducted, Chapter 6 of the Administrative Procedures Act, MCL 24.301 *et seq.;* MSA 3.560(201) *et seq.,* or § 631 of the Revised Judicature Act, MCL 600.631; MSA 27A.631. Where circuit court review or appeal is available under one of those sources and mandamus is sought in the Court of Appeals, this Court could properly decline to entertain the complaint on the grounds that the circuit court remedy, coupled with a complaint, motion or prayer for mandamus relief, is an available adequate remedy." 84 Mich App at 572.

In the instant case, mandamus was filed in our Court long before the decision in *Saginaw Valley Trotting Ass'n.* Therefore, we will not penalize plaintiff for commencing action in the wrong court even if we should conclude that this case should have been commenced in circuit court.

But the question remains, *viz.*—in view of *Saginaw Valley Trotting Ass'n,* is an original action of mandamus in the Court of Appeals the proper procedure for review of the denial of a license under the Private Detective License Act? On the facts of this case, we hold that it is. The facts are undisputed. Only a question of law is involved. In *Saginaw Valley Trotting Ass'n,* as we believe will be true in most instances involving denial of a license, questions of fact were raised. Where only a question or questions of law are involved in suits involving review of license denials and where such denial is not a subject within the Administrative Procedures Act,[3] we hold that mandamus may be

[3] Plaintiff does not have adequate legal remedies under the Administrative Procedure Act licensing or contested case provisions, since there is no legal requirement under the Private Detective License Act for notice and hearing. MCL 24.203(3); MSA 3.560(103)(3). *See Kelly*

initiated in the Court of Appeals rather than the circuit court. To hold otherwise unnecessarily complicates the judicial process by delaying the determination of law which can be made by this Court.

## II. Statutory Interpretation

The relevant section of the Private Detective License Act, MCL 338.826; MSA 18.184(6), reads as follows:

"(1) The secretary of state shall issue a license to conduct business as a private detective or private investigator if he is satisfied that the applicant is a person, or if a firm, partnership, company or corporation, the sole or principal license holder is a person who meets all of the following qualifications:

\* \* \*

"(g) For a period of not less than 3 years:

"Has been lawfully engaged in the private detective business on his own account; or

"Has been lawfully engaged in the private detective business as an investigative employee of the holder of a certificate of authority to conduct a detective agency; or

"Has been an investigator, detective, special agent or police officer of a city, county or state government or of the United States government; or

"*Is a graduate with a degree in a field of police*

*Downs, Inc v Racing Comm*, 60 Mich App 539; 231 NW2d 443 (1975), *Saginaw Valley Trotting Ass'n, supra.* Nor does plaintiff have an adequate legal remedy under the declaratory ruling procedure of APA § 263; plaintiff is seeking a license, not merely a ruling. *Compare* MCL 24.263; MSA 3.560(163) *with* MCL 24.291; MSA 3.560(191). Likewise, the declaratory judgment remedies of APA § 264 fail to apply because no rule of the Department of State Police existed on the educational requirement question. MCL 24.264; MSA 3.560(164). *See Human Rights Party v Michigan Corrections Comm*, 76 Mich App 204, 211; 256 NW2d 439, 443 (1977). Finally, unlike the situation in *Saginaw Valley Trotting Ass'n*, here, there is not available to plaintiff a statutory provision for review in the circuit court, of the department's refusal to license.

*administration from an accredited university or college."* (Emphasis supplied.)

Plaintiff had no on-the-job experience and would qualify for a license only if she met the qualifications underscored above.

Plaintiff and amicus curiae argue that community colleges have existed for 38 years,[4] were given constitutional status in 1963, and in the public mind are considered colleges. This being so, says plaintiff, the word "college" should be given, in accordance to well established rules of statutory construction, its plain and popularly understood meaning. The Attorney General argues just the opposite, claiming that, in Michigan, universities and four-year colleges have been lumped in one category and community colleges have been treated in another category; that universities and colleges and community colleges are referred to in separate sections of the Constitution of 1963,[5] and thus in the legislative mind a college is different from a community college; that accordingly the commonly understood meaning of the word college was a four-year college. The Attorney General also argues that the long-standing administrative construction of the Private Detective License Act, that an associate degree from a community college did not meet the statutory requirements, should be controlling. To this latter argument we attach little weight because there is nothing in the record which suggests the issue has even been raised before.

---

[4] *See Shaw v Macomb Community College,* 389 Mich 69, 75–77; 204 NW2d 129 (1973), for the statutory history of community colleges in Michigan.

[5] Const 1963, art 8, § 6, refers to colleges, and art 8, § 7, refers to community and junior colleges. *See also* discussion by Delegate Andrus in the constitutional debates. 1 Official Record, Constitutional Convention 1961, p 1172.

The established rule of statutory construction that language is to be given its commonly understood meaning is not helpful. As defined in Black's Law Dictionary (4th ed), p 329, a community college is a college.[6] Webster's Third New International Dictionary defines the word college as including both a four-year and a vocational college. See also 14 CJS, Colleges and Universities, § 1, p 1326. Thus, plaintiff meets the *literal* requirements of the statute. For some purposes the word college means a junior college as well as a four-year institution—for example, for purposes of exemption from taxation, *Troy Conference Academy & Green Mountain Junior College v Town of Poultney,* 115 Vt 480; 66 A2d 2 (1949), and for eligibility under the provisions of a will which directed that trust funds be paid to certain persons "while in college" or in securing a "college education", *Mitchell v Whittier College,* 205 Cal 744; 272 P 748 (1928). On the other hand, there is authority that "college" in common parlance refers to a four-year institution. 14 CJS, Colleges and Universities, § 1, p 1327; 15A Am Jur 2d, Colleges and Universities, § 1, p 252. One definition of "college" in Webster's Seventh New Collegiate Dictionary (1970 ed), p 162 is: "an independent institution of higher learning offering a course of general studies leading to a bachelor's degree". Community colleges do not grant a bachelor's degree. So, too, there is case law that a junior or community college has been held not to be a college—for example, for purposes of voting extra millage, *McHenry v Ouachita Parish School Board,* 169 La 646; 125 So 841 (1930).

---

[6] A college is "an institution of learning * * * which offers instruction in the liberal arts and humanities and in scientific branches, but not in the technical arts or those studies preparatory to admission to the professions".

The sum and substance of all of this is that there is no one answer to the question of whether "college" includes a two-year institution. There is no plain and popular understanding that in common parlance "college" means both a two-year and a four-year institution or conversely means only a four-year institution. The answer depends upon the precise wording of the statute involved, the language of the constitution of the jurisdiction, and the circumstances under which the statute was enacted. Consequently, our decision in the instant case is limited to the Private Detective License Act and is of no precedential value for statutes requiring college training, grant-in-aid, matching funds, accreditation or otherwise.

Logic and the constitutional backdrop persuade us that in the present case the word "college" means a four-year institution. To us it appears inconsistent to require in the first part, in a single sentence, a degree from a university (obviously meaning four years) and then in the final two words of the sentence to lower the requirement to a degree from a community college (meaning two years). To us, it is more consistent and logical to conclude the Legislature intended four years. A number of Michigan's four-year colleges acquired university status shortly before the Constitutional Convention but others continued to be designated colleges. Thus, it was common to refer to four-year schools either as universities or as colleges. We believe this is what the Legislature did when preparing the statute in question.

This interpretation is consistent with sub-section (1)(g) of § 6 when read as a whole. That subsection sets forth two alternative qualifications for licensure: 1) on-the-job experience for three years, or 2) education culminating in a degree in police admin-

istration. To us, it appears that the Legislature was saying that if an applicant did not have three years practical experience, four years education was an alternative. Certainly that is what the first portion of the underscored sentence requires. This being so, it is totally inconsistent to interpret the final two words of the sentence ("or college") as requiring only two years of education. It is also inconsistent with the beginning words of subsection (1)(g) "for a period of not less than three years". Statutes should be construed so as to produce, if possible, a harmonious and consistent enactment. *People v Babcock,* 343 Mich 671, 678–679; 73 NW2d 521 (1955). The construction given the statute by the Attorney General and the department is consistent and harmonious. The interpretation urged by plaintiff is strained and internally inconsistent.

In the 13 years since the enactment of the statute, community colleges have greatly expanded the number and depth of courses given in law enforcement. It may well be that today the Legislature would find a two-year degree in police administration sufficient license qualification. However, that is a matter for the Legislature rather than the courts.

Mandamus denied, no costs, a public question being involved.